LIVINGSTONE KUO et al., Appellants, v HOME INSURANCE COM-
PANY, Respondent.

Second Department, May 19, 1986

### APPEARANCES OF COUNSEL

*DiNardo & Gilmartin (Robert E. DiNardo* of counsel), for appellants.

*Bouck, Holloway, Kiernan & Casey (Mary Ann D. Allen* of counsel), for respondent.

### OPINION OF THE COURT

NIEHOFF, J.

As the parties acknowledge, this is a case of first impression in this State.

The plaintiffs, Livingstone Kuo and Maiwha Kuo, appeal from so much of an order of the Supreme Court, Orange County, as granted that branch of the defendant Home Insurance Company's motion for summary judgment which was to dismiss the claim for "freeze-up" damages to their building, allegedly caused by an act of vandalism.

The policy in question covered loss resulting from acts of vandalism. However, the vandalism clause contained a number of exclusions, one of which stated that the carrier "shall not be liable for loss * * * resulting from change in temperature or humidity". The plaintiffs' claim was that the tenant in the subject building, with whom they, as landlords, were having difficulties, had thrown the emergency shut-off switches on the furnace and hot water heater, causing the pipes to freeze and burst, resulting in extensive water damage.

The defendant's motion for summary judgment dismissing the complaint was based, *inter alia,* upon the premise that the ensuing damages resulted from "change in temperature or humidity" within the building after the switches had been turned off and, so, as a matter of law, were excluded from coverage. Special Term agreed with that premise.

In our judgment, the exclusionary clause is ambiguous and (1) may reasonably refer to changes in the weather occurring subsequent to the act of vandalism, or (2) may reasonably be interpreted not to apply when the change in the temperature is the very instrumentality employed by the vandal to work

his mischief. Accordingly, the defendant's motion for summary judgment should have been denied in its entirety.

## FACTS

On July 9, 1980, the plaintiffs purchased from the defendant a general property insurance policy covering the premises leased by them to one Frank Ling, to be used as a restaurant. The basic policy covered loss by fire. Extended coverage was available for vandalism and malicious mischief at an additional cost. The plaintiffs paid the additional premiums and obtained the maximum coverage available under the "General Property Form" policy.

According to the plaintiffs, they experienced difficulties in obtaining prompt payment of the rent from the tenant. As a consequence, the plaintiffs visited the premises in an effort to collect back rent from him. The tenant paid the plaintiffs only $200, a portion of what he owed, and there was obvious animosity between him and the plaintiffs. The plaintiffs claim that the tenant had previously threatened to remove all the furnishings and fixtures he had installed to another location, in violation of the lease. The plaintiffs returned a week later, on January 11, 1981, but found the doors locked and a sign indicating that the restaurant was closed for repairs. The plaintiffs did not have their keys with them and, so, were unable to enter the building.

When the plaintiffs returned with their keys the next day, January 12, they found the premises in a shambles. The plaintiffs maintain that Mr. Ling had stolen or destroyed virtually all of the furniture, furnishings and fixtures. Moreover, they contend, he had thrown the emergency shut-off switches on the furnace and hot water heater, causing the pipes to freeze and burst, resulting in extensive water damage.

Thereafter, the plaintiffs submitted a claim to the defendant. The defendant paid only for the vandalism damage which did not result from the "freeze-up", relying upon the policy exclusion relating to loss resulting from change in temperature or humidity.

## THE VANDALISM CLAUSE

The policy issued to the plaintiffs by the defendant contained the following provisions:

"SECTION VI—PERILS INSURED AGAINST

"This policy insures against all direct loss caused by: * * *

"8. VANDALISM OR MALICIOUS MISCHIEF, meaning only the willful and malicious damage to or destruction of the property covered.

"This Company shall not be liable for loss—

"A. to glass (other than glass building blocks) constituting part of a building, structure or an outside sign.

"B. by pilferage, theft, burglary or larceny, except that this Company shall be liable for willful damage to the building(s) covered caused by burglars in gaining entrance to or exit from the building(s) or any part of the building(s):

"C. by explosion of steam boilers, steam pipes, steam turbines or steam engines, if owned by, leased by, or operated under the control of the named Insured; or by rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown;

"D. from depreciation or deterioration;

"E. *resulting from change in temperature or humidity;*

"F. if the described building(s) had been vacant or unoccupied beyond a period of 30 consecutive days immediately preceding the loss, whether or not such period commenced prior to the inception date of insurance against these periods, but a building in process of construction shall not be deemed vacant or unoccupied, nor shall the unoccupancy provision be applicable to private dwelling property (The words 'vacant' and 'unoccupied' are defined in Section IX, Paragraph 8.)" (Emphasis added.)

On its motion for summary judgment, the defendant insurance company argued that in view of the foregoing policy provisions and exclusions, damages caused by changes in temperature or humidity, including "freeze-up" damages, were not, under any circumstances, covered.

### SPECIAL TERM'S DECISION

Special Term granted the defendant partial summary judgment dismissing the plaintiffs' claim for "freeze-up" damages, stating:

"With regard to plaintiffs' claim for damages in connection with the subject 'freeze-up', defendant's motion is granted * * *

"From a conjunctive reading of all clauses in Section VI Paragraph 8 of the insurance policy, this Court is compelled to

find as a matter of law that the loss claimed is excluded notwithstanding whether the 'change' in temperature is an effect proximately caused by the act of vandalism".

ANALYSIS

We cannot agree with the defendant's position that the policy it has issued excludes it from responsibility for the payment of "freeze-up" damages under any and all circumstances. Rather, we adopt the reasoning of the Minnesota Supreme Court, which was faced with a similar situation in *Fawcett House v Great Cent. Ins. Co.* (280 Minn 325, 159 NW2d 268). There, the loss resulted from a "freeze-up" which followed the acts of vandals who, among other things, turned off the electric power which activated the heating system. The policy contained a clause covering direct loss by vandalism and malicious mischief, but excluding from coverage "any loss resulting from change in temperature or humidity". The jury returned a verdict for the insured against the insurer upon its claim that the destruction of its heating and plumbing system as a result of a freeze-up and the accompanying damage to its premises was covered by the casualty policy issued by the insurer. On appeal, the carrier there, as here, argued that the policy of insurance, in plain and unambiguous language excluded the risk of the loss involved because it resulted from a change in temperature or humidity. The Supreme Court of Minnesota rejected that assertion, writing, in pertinent part *(Fawcett House v Great Cent. Ins. Co.,* 280 Minn 325, 326-327, 159 NW2d 268, 270, *supra):* "The fact that, after the vandals had turned off the heating plant, freezing temperatures caused a rupture of the heating and plumbing systems is neither clearly nor necessarily a loss 'resulting from change in temperature' within the usual and ordinary meaning of paragraph 4 (d) or within the contemplated intent and purpose of the exclusionary provision. Where the language of an exclusionary clause is ambiguous, any doubts as to its meaning must be resolved in favor of the insured and against the insurer who drafted the contract".

The court cited with approval the following language of the trial court: " 'the words "change in temperature or humidity" can reasonably be construed as having reference to changes in the weather * * * In other words, where damage done by an act of vandals is increased by reason of the passage of time and changes in the weather, the endorsement excludes cover-

age to the extent of such increase. But that is not the situation in this case. While the outside temperature was extremely low and in conjunction with the loss of heat in the insured building caused by the act of vandals operated to cause the loss in this case, the evidence does not show that a change in the weather was a factor in the loss sustained by plaintiff' " *(Fawcett House v Great Cent. Ins. Co.,* 280 Minn 325, 327, 159 NW2d 268, 270, *supra).*

As a second ground for not accepting the insurer's exclusion argument, the court went on to state: "It is more reasonable to argue that loss from 'change in temperature or humidity' encompassed only losses directly caused by such changes, not those incidentally aggravated by a change in temperature but which would not have occurred except for acts of vandalism, the risk of which was specifically covered by the policy. From this viewpoint also, the loss here is covered because it was directly caused by a specifically covered risk, even though indirectly and incidentally enhanced by another peril expressly excluded from coverage" *(Fawcett House v Great Cent. Ins. Co.,* 280 Minn 325, 328, 159 NW2d 268, 270, *supra).*

It is a familiar principle of law that policy language is to be liberally construed in favor of the insured. The most frequent statement of the rule is that a contract of insurance couched in language chosen by the insurer is, if open to the construction urged by the insured, to be construed most strongly or strictly against the insurer and liberally in favor of the contention of the insured. In the present case, exclusion D frees the insurer from responsibility for loss from "depreciation or deterioration". That exclusion is followed by exclusion E which absolves the insurer from loss "resulting from change in temperature or humidity". The words "depreciation" and "deterioration" suggest possible loss factors resulting from, or affected by, the passage of time, and it is entirely reasonable to conclude that the words "change in temperature or humidity" which appear in the very next exclusion also have references to changes which, with the passage of time, cause damage to the previously vandalized premises, i.e., changes in the weather.

In the case at bar, the switches were thrown sometime within the first two weeks of January when, presumably, the plaintiffs can establish that there was no significant change in the weather but, rather, that the outside temperature was generally extremely low, and, in conjunction with the loss of

heat in the insured's building caused by an act of vandalism, operated to cause the loss in this case.

Furthermore, we consider it reasonable and proper to interpret the subject loss as a covered one because it allegedly was directly caused by a specifically covered risk, an act of vandalism, even though incidentally enhanced by another peril which may be expressly excluded from coverage.

We note that in its brief on appeal, the insurer points out that "nowhere in the record on appeal in this action have the appellants [plaintiffs] established that their tenant's alleged actions in turning off the furnace and hot water heater were acts of vandalism". The insurer continues by arguing that: "In this case, there has been no factual showing by the appellants either 1) that the furnace and hot water heater were in fact shut off by their tenant, or 2) that the tenant's alleged actions in shutting off the furnace and hot water were deliberate, and intended to cause the damage that ensued. In fact, it is possible that the furnace and hot water heater emergency switches shut down on their own in response to the other damages caused by the tenant's vandalism. It is also possible, especially in light of the on-going rental dispute between appellants and their tenant, that if the tenant did shut off the furnace and hot water heater, he did so only to avoid further liability to the appellants, and not to inflict any damage on the building. Either of these possibilities alone would be sufficient to negate any vandalism coverage for the damages claimed. Thus, the appellants' argument that their freeze-up damages were in actuality vandalism damages suffers, in the first instance, from a fatal lack of proof".

Whether or not the plaintiffs can establish that the tenant threw the switches and, if so, whether his act was one of vandalism, is a matter for the trial, and we do not rule upon that issue at this time. Our holding on this appeal is confined to a determination that the exclusionary clause relating to a change in temperature does not preclude the plaintiffs from recovering if they establish "freeze-up" damage resulting from an act of vandalism by the tenant.

Therefore, the order of Special Term should be modified, on the law, that branch of the defendant's motion which was to dismiss the plaintiffs' claim for damages in connection with the subject "freeze-up" denied, and the matter remitted to the Supreme Court, Orange County, for a trial of the issue of whether the "freeze-up" damages resulted from an act of

vandalism, and, if so, a determination of damages, if any, on that claim.

BROWN, J. P., WEINSTEIN and EIBER, JJ., concur.

Order of the Supreme Court, Orange County, dated July 3, 1984, modified, by deleting the provision thereof granting that branch of the defendant's motion for summary judgment which was to dismiss the plaintiffs' claim for damages in connection with the subject "freeze-up", and substituting therefor a provision denying that branch of the defendant's motion. As so modified, order affirmed insofar as appealed from, with costs to the appellants, and matter remitted to the Supreme Court, Orange County, for a trial on the issue of whether the "freeze-up" damages resulted from an act of vandalism, and a determination of damages, if any, on that claim.