[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 INTRODUCTION
This case was tried to the court on the "Joint Stipulation of Facts" ("Stipulation") which was submitted by the parties, without the formal introduction into evidence of testimony or exhibits. Attached to the stipulation are several documents which the court treats as if they had been admitted as exhibits.
Paraphrased, the complaint alleges that:
 1. The defendant issued to the plaintiff an insurance policy (the "policy") which insured the plaintiff's stock of candy;
 2. The plaintiff's stock of candy was damaged (the "loss") as the result of "a lack of cooling water to the refrigeration system" at the plaintiff's place of business;
3. The loss was covered under the policy;
 4. The plaintiff complied with all conditions of the policy; and,
 5. The defendant denied the plaintiff's claim (the "claim") for the loss.
The defendant's answer effectively admits the allegations recited above, except that it denies the loss was covered by the policy. The defendant has also pleaded as a special defense a lack of coverage for the loss based on exclusions in the policy which state, in excerpted form:
 We will not pay for loss or damage caused by or resulting from any of the following:
 (6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. . .
 (7) The following causes of loss to personal property;
(b) Changes in or extremes of temperature. . .
The parties have also stipulated that, if the plaintiff CT Page 8030 prevails, its damages are in the amount of $23,196.25.
 DISCUSSION The Stipulation
Paragraph 6 of the Stipulation states:
 [The defendants's] denial [of the claim] was based on an investigation into the loss conducted by Robert J. Bussolari from HUDSON INTERNATIONAL. A true and correct copy of Mr. Bussolari's report is attached as Exhibit C.
Mr. Bussolari's report states, in part:
 The insured's facility, Burnham Brady, is a specialty candy factory located on Burnside Avenue in East Hartford, CT in a building estimated to be over 100 years old and shared by a number of tenants. According to Mr. Friedman, one of the tenants, Pit Bull Gym, went bankrupt and left. The electricity to that tenant was subsequently shut off. Some circuits to the insured went dead at that time, indicating that these circuits were shared with the other tenant. An inspection by Mr. DiDomineco (plaintiff's foreman) revealed that not only were there some circuits dead to Burnham Brady, but that the compressor to the sprinkler system was not working. This compressor is used to provide compressed air to keep the sprinkler system piping pressurized, thereby holding the flapper valve closed. The compressor only runs intermittently to provide make-up air in case of small leaks. With the compressor turned off, the pressure in the sprinkler piping will gradually fall off and will eventually cause the low pressure alarm to actuate and to release the flapper valve, causing water to flow into the piping. This process may take hours, days or perhaps a week or more, depending on the air leakage.
CT Page 8031
 The insured claims he advised Mr. Dennis Malapetas, the landlord, of the situation who assured the insured that he would fix it. According to Mr. DiDomineco, Mr. Malapetas rewired the system but the compressor still did not work, but it made a humming noise. Subsequently, the incident associated with the loss occurred. The sprinkler valve actuated and the water was shut off. The candy storage rooms are cooled with a refrigeration system that uses domestic water to cool the condenser. When the condenser is not cooled, the system operates such that the evaporator runs very hot, thereby heating the storage rooms instead of cooling them.
 Burden of Proof
As noted above, the defendant denies that the plaintiff's stock of candy was insured under the policy. The court finds, from the language of the policy and the terms of the stipulation, that the loss was covered under the policy. Accordingly, the issue is whether the loss came within either of the two exclusions raised in the defendant's special defense.
Under Fogarty v. Fidelity Casualty Co., 120 Conn. 296
(1935), an insurer which raises, by special defense, an exclusion as a basis for denying coverage assumes the burden of persuasion on that defense. Accordingly, the issue in this case is whether the defendant has met its burden to establish, by a preponderance of the evidence, that the loss comes within at least one of the exclusions pleaded.
 Mechanical Breakdown
Under the caption "CONCLUSIONS", Mr. Bussolari's report states:
 Conflicting descriptions of the events at the time of the loss from different people and the lack of positive evidence makes it impossible to determine the exact sequence of events leading to the loss. However, it is clear that someone manually shut off the domestic water to the insured's facility resulting in the loss."
CT Page 8032
Notwithstanding the quoted disclaimer, Mr. Bussolari's report goes on to state:
 It is my opinion that the following sequence of events occurred:
 1. The Pit Bull Gym was closed and the electrical power was shut off.
 2. The insured discovered that some of their electrical circuits went dead and upon further investigation discovered that the electrical power was shut off to the sprinkler system air compressor.
 3. The landlord fixed the circuits but rewired the power to the compressor incorrectly, leaving the compressor inoperative.
 4. The pressure in the sprinkler piping gradually was reduced to the point where the low pressure alarm was set off and the sprinkler valve flapper was actuated, filling the piping with water.
 5. The fire department arrived and finding no fire, shut off the main water supply valve to the sprinkler system to deactivate the alarm.
 6. Someone drained the sprinkler system and shut off the domestic water supply.
 7. The lack of cooling water to the refrigeration system caused an overheating of the cool rooms used to store the candy products.
 8. The insured opened the domestic water supply and hired an electrician to repair the electrical circuit to the compressor to get it operational.
To prevail on its defense of mechanical breakdown, the defendant must establish that such a breakdown occurred, and that that breakdown caused the loss. Because Mr. Bussolari's report is the only evidence on causation, and since the court finds that the report does not establish, by a preponderance of the evidence, that there was a mechanical breakdown (much less that a CT Page 8033 mechanical breakdown caused the loss), the defendant has not met its burden and cannot prevail on that defense.[1]
 Changes in Temperature
The plaintiff claims that the language in the exclusion, "(c)hanges in or extremes of temperature," is ambiguous and should be construed against the defendant. The basic rules of construction of an exclusion in an insurance policy were recently restated, as follows:
 If, however, the insurance coverage is defined in terms that are ambiguous, such ambiguity is . . . resolved against the insurance company. Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted. [T]his rule of construction favorable to the insured extends to exclusion clauses. . . (Quotation marks and citations omitted.)
Peerless Ins. Co. v. Gonzalez, 241 Conn. 476, 482 (1997).
No Connecticut case dealing with the phrase "changes in temperature" has come to the court's attention. However, case law from other jurisdictions has held those words to be ambiguous because they can be read to refer either to indoor or outdoor temperature. Purpura v. Continental Casualty Co., 143 App.Div.2d 320
(N.Y.App.Div. 1986); Fawcett House. Inc. v. Great Central Ins.Co., 280 Minn. 325 (1968); Kuo v. Home Ins. Co.,502 N.Y.S.2d 756 (1986).
The court finds the cases cited above to be persuasive, and it is held that the exclusion in the policy for loss caused by "(c)hanges in. . . temperature" is ambiguous in that it can be read to mean changes in either indoor or outdoor temperature (weather).
Because Peerless mandates that the court adopt the construction of an ambiguous phrase which is most favorable to the insured, "(c)hanges in . . . temperature" is held to refer to outdoor temperature. Because there is no claim by the defendant that the loss resulted from a change in outdoor temperature, the defendant cannot prevail on that exclusion.
 CONCLUSION
CT Page 8034
The issues on the complaint and on the defendant's special defense are found for the plaintiff, and judgment is entered for the plaintiff to recover $23,196.25 of the defendant.
LEVINE, G., J.