W. Junius ROBINSON, Appellant,

v.

AETNA LIFE INSURANCE COMPANY, Appellee.

No. 5737.

District of Columbia Court of Appeals.

Argued Sept. 15, 1971.

Decided March 6, 1972.

9. *Id. Cf.* Jackson v. United States, 122 U.S.App.D.C. 324, 353 F.2d 862 (1965).

------

Jay L. Westbrook, Washington, D. C., for appellant. Michael Nussbaum, Washington, D. C., also entered an appearance for appellant.

James P. Schaller, Washington, D. C., for appellee.

Before KELLY, FICKLING and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal from the trial court's judgment denying appellant, plaintiff below, recovery of expenses incurred in transporting his injured wife from Athens, Greece to New York City. Appellant based his claim upon an insurance contract with appellee, Aetna Insurance Company (Aetna), which provided under certain conditions for payment of the cost of "professional ambulance service."

Appellant's wife fell and sustained a fracture of the femur bone while she and her husband were passengers on a cruise en route from the island of Crete to the island of Rhodes. She was taken to a hospital in Rhodes where she stayed for two days while X-rays were taken and a heavy body cast was applied. A few days later, she was transported by plane to Athens, Greece. After arriving there, Mrs. Robinson was examined by a doctor in the admitting section of a hospital but due to overcrowded conditions in the hospital appellant obtained a hotel room where he and his wife spent the night. Having decided to return immediately to the United States, he acquired tickets the next morning to New York on a regularly scheduled flight of Sabena Belgian World Airlines.

The following day Sabena provided an ambulance to pick her up at the hotel and transport her to the airport. She was taken aboard the plane by stretcher and was then placed on a different, specially-designed stretcher formed by folding down three seats and fitting the stretcher onto those seats. The plane then proceeded on the journey to New York, stopping only in Vienna and Brussels.

The cost for the three seats and services provided for Mrs. Robinson was $850.00, and her bill contained no itemization of the cost of the various services she received. The coach fare for appellant aboard the same flight was $283.00, virtually one-third of the cost of Mrs. Robinson's ticket. She received no substantial medical treatment from any hospital in Europe, except for the body cast.

Upon arrival in New York, appellant and Mrs. Robinson spent the night in a hotel, and the next day Mrs. Robinson was transported by land ambulance to the George Washington University Hospital in the District of Columbia. The cost of the ambulance from New York to Washington was $235.00, and Aetna paid without delay the percentage called for by the policy of this ambulance cost.

Appellant filed a claim with appellee for the $850.00 plane fare from Athens to New York, but appellee refused payment stating that this expense was not covered by the appellant's policy. In relevant part the policy provided:

ALLOWABLE EXPENSES

\*   \*   \*   \*   \*   \*

Professional ambulance service to the first hospital where treated, from that hospital to another *in the area* if necessary treatment is not available at the

first hospital, and from the hospital to the home if required by the patient's condition.[1] (Emphasis supplied.)

After a trial without jury, the trial court found that the language "professional ambulance service" was not ambiguous and had a popular sense. It further found that although a common carrier might under certain circumstances fall within the policy's coverage, under the facts of this case, Sabena had not supplied "professional ambulance service" to appellant. Finally, the trial court held that the transportation from Athens to New York did not constitute "professional ambulance service to the first hospital where treated, from that hospital to another *in the area* if necessary treatment is not available at the first hospital . . . ." (Emphasis supplied.)

Appellant argues that nonpayment by Aetna is not justified by the requirement that the transportation be to another hospital "in the area" of the first hospital. In support of this contention he relies upon the payment by Aetna of the cost of the land ambulance from New York to George Washington Hospital. It is argued that if Aetna had considered itself not liable for payment of transportation costs between Athens and Washington because of the "in the area" provision, it would not have paid for the transportation by ground ambulance between New York and Washington. Consequently, says appellant, such payment demonstrates that Aetna believed that Washington could reasonably be construed in this emergency situation as "in the area" of Athens.

In response, Aetna asserts that the payment was made in recognition of the fact that had Mrs. Robinson properly been taken to a hospital "in the area," Aetna would likely have been liable for certain transportation charges for "professional ambulance service" bringing her home. Thus, according to Aetna, the payment for the land ambulance was a discretionary act by Aetna not required by the policy. As further support for this position, Aetna points to the policy provision under which it may pay "higher-than-normal" charges if Aetna determines them to be reasonable.

Although we are aware of a traveler's difficulties in confronting an emergency like this while overseas, he must bring himself within the terms of the policy in order to receive payment. The terms of the policy, so long as they are clear and unambiguous, express the contract between the parties and will be enforced by the courts unless they violate a statute or public policy. American Empire Ins. Co. of South Dakota v. Fidelity & Deposit Co., 408 F.2d 72 (5th Cir.), cert. denied, 396 U.S. 818, 90 S.Ct. 55, 24 L.Ed. 69 (1969); Matusek Academy of Music, Inc. v. National Surety Corp., 210 F.2d 333 (7th Cir. 1954); Hawkeye-Security Ins. Co. v. Myers, 210 F.2d 890 (7th Cir. 1954). Consequently, the insurer may validly limit the scope of its liability by a policy provision and we may not presume that any such limitation was idly inserted into the policy. Gulf Ins. Co. v. Tilley, 280 F.Supp. 60 (N.D.Ind.1967), aff'd, 393 F.2d 119 (7th Cir. 1968).

Here, we believe the trial court correctly found that George Washington University Hospital is not "in the area" of hospitals in Rhodes or Athens. The provision contains plain and unambiguous language, and to construe the phrase otherwise would, in effect, eliminate it from the policy as it would be possible to return to a home hospital from anywhere in the country, or in the world, and claim coverage under the policy simply upon a showing that the first hospital where the injured person was treated was inadequate for further treatment.

---

1. It was stipulated at trial that a brochure given to Mr. Robinson accurately reflected the provisions of the master policy and represented the contract between the parties.

■ We do not believe that the payment by Aetna of the transportation cost from New York to Washington compels a contrary conclusion. Both the testimony concerning the payment and Aetna's reason for the payment were before the trial court who had the responsibility of considering all the evidence and construing the contract. Under the circumstances of this case, we conclude there was no error in the trial court's construction of the "in the area" clause of the policy, and this precludes recovery. This being so, we need not consider the merits of appellant's second contention that the trial court erred in finding that the service rendered by Sabena was not "professional ambulance service" within the meaning of the policy.

Affirmed.