Chauntrice PRICE, Appellant,

v.

John DOE and Government Employees Insurance Company, Appellees.

No. 93–CV–698.

District of Columbia Court of Appeals.

Argued Feb. 3, 1994.

Decided March 17, 1994.

---

Robert M. Price, Washington, DC, for appellant.

John M. Dahut, Kensington, MD, for appellee, Government Employees Ins. Co.

Before FERREN and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

FERREN, Associate Judge:

Appellant Chauntrice Price was an automobile passenger injured in an accident. Because she failed to report the accident to the police (or other specified official) within twenty-four hours, as her driver's insurance policy required, the trial court granted summary judgment for appellee, Government Employees Insurance Company ("GEICO"). Appellant seeks reversal, arguing that the so-called police notification provision is too ambiguous to apply to the circumstances of this case and, in any event, as applied here, violates public policy inherent in the uninsured motorist statute, D.C.Code § 35–2106(f) (1993). We agree with appellant that this notification provision is too ambiguous to be enforced in these circumstances. Accordingly, we reverse.

I.

On July 25, 1991, appellant was riding to work in the back seat of an automobile driven by Ms. Birdie McKay when another driver rear-ended McKay's vehicle. Both McKay and the driver of the other car pulled over to the side of the road and spoke for approximately five to ten minutes. Because there did not appear to be any damage to either automobile and no one seemed to be injured, McKay did not get a name or any other information from the other driver.

Although appellant did not feel any pain at the time of the accident, she felt a sharp pain in her back as she got out of the car a little while later when she arrived at work. She has subsequently incurred approximately $8,000 in medical bills, allegedly as a result of the accident. Appellant filed an uninsured motorist claim under McKay's insurance policy with GEICO. Neither appellant nor McKay ever contacted the police or any other public office regarding the accident.

GEICO moved for summary judgment. The trial court granted the motion, reasoning that because appellant did not report the accident to the police (or other specified official) within twenty-four hours, as required by McKay's insurance policy, she did not meet her contractual obligations and could not recover.

## II.

D.C.Code § 35–2106(f)(1) defines uninsured motor vehicle:

For the purposes of this subsection, the term "uninsured motor vehicle" means a motor vehicle which:

(A) Is a motor vehicle which is not insured by a motor vehicle liability policy applicable to the accident;

(B) Is covered by a motor vehicle liability policy of insurance but the insured denies coverage for any reason or becomes the subject of insolvency proceedings in any jurisdiction; or

(C) Is a motor vehicle which causes bodily injury or property damage and whose owner or operator cannot be identified.

Under the GEICO policy, "Uninsured Motorists Coverage" protects the policy owner and his or her passengers "for injuries and property damage caused by uninsured and hit and run motorists." "Uninsured Auto" is defined as

[1] an auto which has no bodily injury liability and property damage bond or insurance policy applicable to the accident. [2] This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

These provisions track the first two statutory uninsured motorist categories quoted earlier, D.C.Code § 35–2106(f)(1)(A) and (B).

GEICO then uses different terminology—"Hit–and–Run Auto"—to describe the third uninsured motorist category, § 35–2106(f)(1)(C), covering injuries to persons or property caused by a motor vehicle "whose owner or operator cannot be identified." Appellant and ·GEICO agree that appellant's claim comes under this statutory coverage, which the policy defines and conditions as follows:

1. "Hit–and–Run Auto" is an auto causing bodily injury to an insured or property damage, and whose operator or owner cannot be identified, provided the insured or someone on his [or her] behalf:

(a) reports the accident within 24 hours to a police, peace or judicial officer or to the Department of Transportation;

(b) files with us within 30 days a statement setting forth the facts of the accident and claiming that he [or she] has a cause of action for damages against an unidentified person; and

(c) makes available for inspection, at our request, the auto occupied by the insured at the time of the accident.

The policy also states that "[s]uit will not lie against us unless the insured or his [or her] legal representative have fully complied with all the policy terms," and that "[a]ny terms of this policy in conflict with the statutes of any state or the District of Columbia are amended to conform to those statutes."

## III.

■■■ Generally, "[t]he terms of the policy, so long as they are clear and unambiguous, express the contract between the parties and will be enforced by the courts unless they violate a statute or public policy." *Robinson v. Aetna Life Ins. Co.*, 288 A.2d 236, 238 (D.C.1972). *See also* 8C JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 5067.35 (1981) ("[T]he public policy as expressed in the [uninsured motorist] statute will control over the express terms of the contract."). Thus, the question before us is whether the government notifica-

tion provision [1] of GEICO's policy is sufficiently clear, and consistent with the uninsured motorist statute, to be valid and enforceable.[2] We conclude, under the circumstances of this case, that because of the ambiguity of the government notification provision, the answer is "no."

### A.

In the first place, the location of the government notification provision in the "Hit-and–Run Auto" section of the policy creates an ambiguity. The language of that section itself is fairly clear, but someone in appellant's situation is not likely to look under a "Hit–and–Run Auto" heading for information about filing an uninsured motorist claim under circumstances where the other driver stopped for at least five minutes to talk with the policyholder.

Second, the colloquial meaning of "hit-and-run" suggests illegal action. Webster's Dictionary defines a hit-and-run driver as one who is "guilty of leaving the scene of an accident without stopping to render assis-

tance or to comply with legal requirements." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1074 (1986). Thus, even if someone should be able to understand that "hit-and-run" refers to any situation where the "operator or owner cannot be identified," appellant still might reasonably have concluded that the government notification provision did not apply in her particular case because nothing illegal had occurred. Appellant explained in her deposition that she did not think it was necessary to call the police because a crime had not been committed and she was not the driver of the car. Significantly, GEICO concedes in its brief that a "claimant who was not the victim of an illegal hit-and-run accident does not have any basis to file a police report." [3]

Finally, the policy is all the more ambiguous because the government notification requirements in GEICO's policy are not congruent with reporting requirements established by law. Under Municipal Regulations, only the owner and the driver of a motor vehicle are required to file an accident report. *See* 18 DCMR § 803.1 (1987).[4] Under

---

**1.** The policy condition at issue requires notification "to a police, peace or judicial officer or to the [D.C.] Department of Transportation." Although the parties refer to a "police notification provision," perhaps because people involved in accidents commonly file reports with the police, we prefer the more accurate term, "government notification provision," in recognition of the various reporting options available under the policy.

**2.** Because GEICO has relied exclusively on the government notification provision, GEICO has not argued, in the alternative, that appellant's claim should be dismissed because the owner or operator of the other car could have been identified with reasonable efforts. At this time, therefore, we do not decide whether D.C.Code § 35–2106(f)(1)(C) requires a claimant to make reasonable efforts, under the circumstances, to learn the identity of the owner or operator of the motor vehicle causing the damage before recovering for an injury under subsection (C) on the ground that the owner or operator "cannot" be identified.

**3.** In the portion of GEICO's brief from which we take this quotation, GEICO acknowledges that the government notification provision applies only to true hit-and-run situations, then appears to argue that in all other situations the claimant presumably will learn the identity of the other car's driver, and then seems to conclude that someone in appellant's situation cannot recover under the policy either because she did not file a

police report or because she lacked the information necessary to verify coverage under the other two statutory/insurance policy uninsured motorist provisions. This argument, if we have discerned it correctly, comes close to saying that appellant cannot recover under the third statutory/policy provision because, absent a true hit-and-run situation, she should have been able to identify the driver but failed to do so and thus cannot legitimately claim that the other car's operator "cannot be identified." As indicated earlier, however, see *supra* note 2, GEICO has declined to press this "cannot be identified" argument, preferring—as we confirmed at oral argument—to rely exclusively on the validity of the government notification provision and appellant's failure to comply with it.

**4.** 18 DCMR § 803.1 (1987) provides:
  The owner and driver of any motor vehicle involved in any manner in an accident anywhere in the District of Columbia, regardless of whether the accident has occurred on public or private property, regardless of whether any report has been made to the Metropolitan Police Department of the accident, and of fault or lack of fault on the part of any person involved in the accident, shall furnish a report of the accident to the Director [of the Department of Motor Vehicles] in the following circumstances:
  (a) When death or bodily injury (regardless of how slight) of any person has occurred;

the GEICO policy, however, every claimant-"insured"—including a passenger [5]—or someone acting on the insured's behalf, is required to report a hit-and-run accident to the police or other specified official within twenty-four hours.[6] Anyone can be expected to file an accident report required by law, *see* 18 DCMR § 803.2 (1987), *supra* note 4, whether in a true hit-and-run situation or not. But we do not believe that an automobile passenger (not the owner) who is *not* required by law to file such a report would perceive an obligation to do so under the GEICO policy, when no illegal hit-and-run action has taken place *and* applicable regulations would exempt a passenger from having to do so.

In sum, by taking the third statutory uninsured motorist category, D.C.Code § 35-2106(f)(1)(C), out of the "Uninsured Auto" portion of the policy (where the other two statutory categories are covered) and placing it separately in a "Hit–and–Run Auto" portion of the policy, GEICO may have added clarity for claimants in true hit-and-run situations. But that very clarity for the usual situation has resulted in obfuscating a claimant's responsibilities in other situations where the operator of the other vehicle "can-

not be identified." The policy, therefore, was not "clear and unambiguous," *Robinson*, 288 A.2d at 238; it did not assuredly tell appellant that, even in her situation, she had to notify the police or lose coverage.

### B.

GEICO argues that the government notification provision is essential because it deters fraud, limiting claims where the operator of the other vehicle cannot be identified to those arising from illegal hit-and-run accidents.[7] Appellant replies that, because GEICO has never contested the truthfulness of her story, GEICO has suffered no fraud or any other kind of prejudice from her failure to notify the police or the Department of Transportation. See *supra* note 6. Absent prejudice, continues the argument, there is no basis for imposing a requirement on appellant, resulting in loss of coverage, that is not easily discernible in the policy. See *supra* Part III. A.

▆ We agree that GEICO has not been prejudiced and that GEICO's fraudulent claims argument does not fit a situation, such as this one, where GEICO does not question the legitimacy of appellant's assertion that

(b) When damage in excess of two hundred and fifty dollars ($250) to the property of any one (1) person has occurred;
(c) When damage to any District property has occurred; or
(d) When a notice of infraction has been issued.

5. GEICO's policy defines an "insured" to include any person "occupying an insured auto" in addition to the named insured or a relative of the named insured living in the insured's household.

6. The GEICO policy initially required the insured to report "the accident within 24 hours to a police, peace, or judicial officer or to the Commissioner of Motor Vehicles." GEICO later amended the policy by replacing "Commissioner of Motor Vehicles" with "Department of Transportation." The Municipal Regulations of the District of Columbia require the report to be filed with the Director of the Department of Motor Vehicles; however, "Reorganization Plan No. 2 of 1975 combined the Department of Motor Vehicles and the Department of Highways and Traffic to form the Department of Transportation." D.C.Code § 40–703 (1990) (cmt. entitled "Department of Vehicles and Traffic abolished"). Next, "[t]he functions of the Department of

Transportation were transferred to the Department of Public Works by Reorganization Plan No. 4 of 1983, effective March 1, 1984." *Id.; see* 30 D.C.Reg. 6428–33 (1983). Because the Department of Motor Vehicles is a division of the Department of Transportation within the Department of Public Works, and because only the Insurance Operations branch of the Department of Motor Vehicles takes accident reports, we assume that a report made to the Director of the Department of Motor Vehicles would comply with GEICO's policy terms. In any event, we need not address this issue because neither appellant nor McKay reported the accident to anyone.

7. Here, GEICO implicitly argues that anyone who cannot tell GEICO the name of the other vehicle's driver, when the accident was not truly hit-and-run, probably—or at least presumably—is filing a fraudulent claim under § 35-2106(f)(1)(C) because, absent a fleeing vehicle, the claimant presumably will be able to get the other driver's name. Nonetheless, as indicated earlier, see *supra* notes 2 and 3, GEICO does not deny coverage on the ground that appellant failed to show the other driver "cannot be identified"; GEICO merely relies on appellant's failure to notify the government about the accident.

the other driver "cannot be identified." See *supra* notes 2, 3, and 7. GEICO accepts that there is no fraud here because, without question, appellant cannot identify the other driver—as in a true hit-and-run situation. And yet GEICO acknowledges in its brief that a claimant, like appellant, "who was not the victim of an illegal hit-and-run accident does not have any basis to file a police report." Accordingly, once GEICO accepts—as it has in this case—that appellant is not perpetrating a fraud and had no reason to notify the government about the accident, GEICO's fraudulent claims policy argument collapses, as applied to the kind of situation we have here.

\* \* \*

We conclude that application of the government notification provision in appellant's situation would improperly tolerate a serious ambiguity. There is an applicable "rule of construction that ambiguities in insurance contracts are resolved favorably to the insured." *Continental Casualty Co. v. Beelar,* 132 U.S.App.D.C. 1, 2, 405 F.2d 377, 378 (1968). We therefore cannot enforce that provision under the circumstances presented here. We reverse the trial court's grant of summary judgment and remand for trial.

*Reversed and remanded.*