**FIDELITY SECURITY LIFE INSURANCE COMPANY,**
Plaintiff,

v.

**James McLAUGHLIN, Defendant.**

**Civ. A. No. 94–0365 PLF.**

United States District Court,
for the District of Columbia.

Feb. 10, 1995.

Edward G. Gallagher and James C. Thompson, Wickwire Gavin, P.C., Vienna, VA, for plaintiff.

Bruce C. Eddy, Greenbelt, MD, for defendant.

## MEMORANDUM OPINION

FRIEDMAN, District Judge.

On March 31, 1985, Brenda McLaughlin completed an application for a Fidelity Security Life Insurance Company group life insurance policy. On June 10, 1985, she became insured under Policy No. FL–331, with her husband, defendant James McLaughlin, as the named beneficiary. The parties agree that Brenda McLaughlin made all of her premium payments under the policy from June 10, 1985 until June 1989. On June 10, 1989, the policy lapsed due to nonpayment of premiums.[1] On November 6, 1989, Fidelity informed Brenda McLaughlin that her life insurance policy was cancelled. According to defendant, Brenda McLaughlin became totally disabled sometime in 1985. Brenda McLaughlin died on September 3, 1991.

Brenda McLaughlin's life insurance policy contained a waiver of premium disability benefit provision that stated:

Upon due proof of Total Disability of the Insured while the Policy is in force, the Company will waive the payment of any premium of the Insured becoming due after the commencement of and during continued total disability of the insured but not after the non-renewal of the Policy

pursuant to the Section therein entitled "Renewal of Policy."

Complaint, Ex. A. Defendant acknowledges that he was aware of this provision in the insurance policy. McLaughlin Aff. ¶ 6; McLaughlin Dep. at 42. Defendant also admits that neither he nor his wife submitted proof under the disability policy to Fidelity that Brenda McLaughlin was totally disabled or applied for waiver of premiums, either orally or in writing, under the waiver of disability provision while the policy was in force. McLaughlin Dep. at 43–46, 65, 78–79. Defendant claims, however, that on several occasions subsequent to his wife's incapacitation, he and his wife telephoned Fidelity to inquire about the waiver of premium disability benefit provision, but were told by Fidelity employees that no such provision existed in the policy. Counter–Complaint ¶ 8; Def. Opp. at 2; McLaughlin Aff. ¶ 6.

On January 14, 1992, Fidelity received a letter from James McLaughlin, dated January 2, 1992, requesting a waiver of premium for Brenda McLaughlin based on the disability benefit provision of her life insurance policy. Fidelity forwarded waiver of premium claim forms to Mr. McLaughlin, and he returned the forms in May 1992. Upon investigation into Brenda McLaughlin's medical history from 1985 until her death in 1991, Fidelity determined that no evidence existed to substantiate James McLaughlin's claim that his wife was totally disabled during the policy's active period. It therefore concluded that she would not have been eligible for waiver of the premium even if Fidelity had been provided with proof of total disability in a timely fashion.

Fidelity filed this declaratory judgment action against James McLaughlin, claiming that neither the defendant nor his wife provided proof of total disability while the policy was in force, a condition precedent to obtaining a waiver of premium, and seeking a declaration that James McLaughlin therefore is not entitled to benefits under the policy. Defendant answered and filed a counter-

---

1. The policy provided:
   All premiums under the Policy are payable in advance.... If any premium payable is not paid on or before its due date, that premium is in default and the Policy shall terminate [as of the premium date when the Insured fails to pay the required premium].
   Complaint, Ex. A.

claim, alleging that in reliance upon representations made by Fidelity employees regarding the absence of a waiver of premium provision in his wife's policy he permitted the policy to lapse.

Fidelity seeks summary judgment against James McLaughlin on the ground that the insurance policy explicitly required that proof of total disability be submitted to Fidelity while the policy was in force in order to trigger the waiver of premium provision.[2] Defendant responds that his inquiries informed Fidelity of the nature of Brenda McLaughlin's disability and that he should not be denied benefits under the insurance policy for filing a belated claim when the misrepresentations of plaintiff's employees are to blame for his tardiness. Following a hearing on plaintiff's motion for summary judgment, both parties submitted supplemental memoranda. Upon consideration of all submissions made by the parties, the relevant legal authority and the arguments of counsel, the Court is persuaded that plaintiff's motion for summary judgment should be granted.

## I. SUMMARY JUDGMENT STANDARDS

Under Rule 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2514; *see also Washington Post Co. v. U.S. Dept. of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir.1989).

On the other hand, the Rule requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, depositions or other competent evidence setting forth specific facts showing that there is a genuine issue of material fact in dispute. Fed.R.Civ.P. 56(e). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

In a suit on a contract, summary judgment is appropriate where the language of the contract is not ambiguous; "a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *Byrd v. Allstate Ins. Co.,* 622 A.2d 691, 693 (D.C.1993) (citation omitted). In the case of a life insurance policy, generally "the terms of the policy, so long as they are clear and unambiguous, express the contract between the parties and will be enforced by the courts unless they violate a statute or public policy." *Price v. Doe,* 638 A.2d 1147, 1149 (D.C.1994); *see Chiriboga v. Int'l Bank for Reconstruction and Development,* 616 F.Supp. 963, 969 (D.D.C.1985); *Robinson v. Aetna Life Ins. Co.,* 288 A.2d 236, 238 (D.C.1972).

## II. ANALYSIS

The dispositive issue in this case involves the language of the waiver of premium disability provision in Brenda McLaughlin's life

---

2. Fidelity also argues that it is entitled to summary judgment because Brenda McLaughlin was not totally disabled so as to be covered by the waiver of disability provision and that defendant's delay in invoking the waiver of premium provision unfairly prejudiced Fidelity's ability to investigate the claim. Pl.Mem. at 8. The Court need not address these issues in light of its resolution of the proof of disability issue.

insurance policy. The policy is clear. It provides that the policy terminates if any premium is not paid on or before its due date. Complaint, Ex. A. Further, it requires "due proof of Total Disability of the Insured *while the Policy is in force*" as a condition precedent to the waiver of premium benefit. Complaint, Ex. A (emphasis added). Neither party disputes the clear language of the termination or disability provisions, and the Court finds that the provisions are clear and unambiguous. Furthermore, defendant acknowledges that the June 1989 premium for Policy No. FL–331 was not paid and that the policy was terminated on June 10, 1989, and that neither he nor his wife ever submitted a written claim for waiver of premiums or provided Fidelity with any substantiation of Brenda McLaughlin's disability while the policy was in force. McLaughlin Dec. at 43–46, 65, 78–79.

Rather, defendant argues that the insurer was "on notice as to the nature of the disability" because he inquired by telephone about the waiver of premium provision and explained to Fidelity's employees the purpose of his inquiry. Counter–Complaint ¶¶ 8–9; Def.Supp.Mem. at 5. He therefore contends that the requirements of the waiver of premium disability provision were effectively met or that its strict requirements do not apply because the insurer's employees denied him an opportunity to apply for the waiver of premium coverage by incorrectly advising him that *no such provision existed.*

■ Other than his own deposition testimony, defendant has provided no evidence of his alleged telephone calls to Fidelity during the life of the insurance contract, and Fidelity and its employees have no record or recollection of receiving any such calls. Furthermore, defendant testified at his deposition that the telephone calls that he made to Fidelity consisted of "regular conversation to find out the status of the claim … [and inquiry] about the claim form for the waiver of premium." McLaughlin Dep. at 58. He did not testify that he advised the Fidelity employees with whom he purports to have spoken of his wife's disability and certainly does not suggest that what he did say to them constituted *proof* of her disability.

Thus, even if James McLaughlin made the telephone calls he claims to have made, defendant's assertions do not create a genuine dispute of *material* fact: his telephone inquiries do not amount to "due proof," as is required by the insurance contract.

■ While Brenda McLaughlin's policy does not state the manner or form, oral or written, in which "due proof" of total disability must be established, whatever form such proof takes it must provide reasonable and timely notice. It must reasonably convey to the insurer in a timely fashion that the insured is under a disability that entitles her to the waiver of premiums benefit, so that the insurer has an adequate opportunity to investigate and test the validity of the claim. *Mayer v. State Mut. Life Assur. Co.,* 73 A.2d 512, 513 (D.C.1950). *See Diamond Serv. Co., Inc. v. Utica Mut. Ins. Co.,* 476 A.2d 648, 652 (D.C.1984); *Greenway v. Selected Risks Ins. Co.,* 307 A.2d 753 (D.C.1973); *Couch on Insurance 2d,* § 32:38. By defendant's own testimony, his telephone calls to Fidelity were about the status of the claim and the claim forms and could not have been understood by Fidelity as the required notice.

■ Furthermore, even if there were evidentiary support that Fidelity employees told defendant during these telephone calls that the policy did not include a waiver of premium disability provision, the terms of the policy would control. Any asserted reliance by defendant upon the purported representations of Fidelity's employees was not reasonable because James and Brenda McLaughlin were always in possession of a copy of the policy and could dispute any assertions made by the employees that conflicted with the clear and unambiguous language of the policy. Indeed, Mr. McLaughlin testified at his deposition that when he received a copy of the insurance policy in 1985, he was aware that it would lapse if the premiums were not paid and was specifically aware of the language and import of the waiver of disability provision. McLaughlin Dep. at 38–43. Defendant has not demonstrated that he reasonably relied on the alleged misrepresentations. His equitable estoppel argument therefore must be rejected. *Dews v. Dews,* 632 A.2d 1160 (D.C.1993).

James McLaughlin also suggests that Fidelity was on notice of his wife's total disability prior to the termination of her life insurance policy, Policy No. FL–331, because he had submitted proof of disability claim forms to receive benefits under a different Fidelity policy, Brenda McLaughlin's *disability* policy, Policy No. FH–38. McLaughlin Dep. at 44–46. There is no evidence in the record, however, that the disability provisions of the two policies were the same, that they required the same proof of disability, that claims under the two policies were even processed by the same personnel, division or office at Fidelity, or that Fidelity personnel had any reason to know that Mr. McLaughlin's claim forms for Policy No. FH–38 were somehow intended to provide notice with respect to Policy No. FL–331. *See* McLaughlin Dep. at 65–66, 78–79. Even if one credits Mr. McLaughlin's assertions that he submitted proof of disability claim forms in satisfaction of a disability claim made under a separate Fidelity *disability insurance* policy that Brenda McLaughlin carried, Policy No. FH–38, those claim forms were insufficient to meet the requirements of the clear and unambiguous language of the waiver of premium disability provision in *life insurance* Policy No. FL–331.

The first notice plaintiff received of Brenda McLaughlin's disability and claim for waiver was on January 14, 1992, over two-and-one-half years after the policy had lapsed and was no longer in force and almost one year after her death. Defendant admits that prior to his letter to Fidelity in 1992, he had not submitted written documentation or other proof of his wife's disability. This failure is not acceptable under the clear and unambiguous language of the policy to provide due proof of total disability "while the Policy is in force ... but not after the non-renewal of the policy," Complaint, Ex. A, and is insufficient notice at law. The obligation of the insurance company does not rest upon the existence of the disability, but upon receipt by the company of proof of the disability, *Mayer v. State Mut. Life Assur. Co.*, 73 A.2d at 513; *Lee v. Travelers Ins. Co*, 184 A.2d 636 (D.C.1962), proof it never received while the policy was in force. Under the circumstances, the Court finds that James McLaughlin's acknowledged delay in notifying Fidelity of his wife's disability was not reasonable and did not comport with the plain language of the policy.

Because the Court finds as a matter of law that Brenda McLaughlin's insurance policy, naming James McLaughlin as her beneficiary, contained a waiver of premium disability provision that was clear and unambiguous, and because defendant failed to comply with the due proof requirements of this provision while the policy was in force, there is no genuine dispute as to any material facts and plaintiff Fidelity Security Life Insurance Company is entitled to judgment as a matter of law. An order consistent with this Opinion shall be issued this same day.

SO ORDERED.

### ORDER

For the reasons stated in the Memorandum Opinion filed this day, it is this 9th day of February 1995, hereby

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED; and it is

FURTHER ORDERED that judgment is entered for Plaintiff on its Complaint for Declaratory Judgment declaring, adjudging, finding and decreeing that no benefits are due and payable to James McLaughlin under Policy No. FL–331 because James McLaughlin has failed to satisfy a condition precedent to recovery under the policy by not producing proof of total disability of Brenda McLaughlin while the policy was in force.

SO ORDERED.