John R. REDMOND, Appellant,

v.

STATE FARM INSURANCE COMPANY, et al., Appellees.

No. 97–CV–12.

District of Columbia Court of Appeals.

Argued May 5, 1998.
Decided May 6, 1999.

Joseph F. Cunningham, Alexandria, VA, for appellant.

Allan A. Noble, with whom Laura Basem Jacobs, Bethesda, MD, was on the brief, for appellees.

Before WAGNER, Chief Judge, and TERRY and REID, Associate Judges.

REID, Associate Judge:

This case raises the issue as to whether an insurance policy covers appellant John R. Redmond with respect to lead paint claims made by tenants of an apartment building which he owns. Mr. Redmond sought a declaratory judgment that his insurance policy imposed a duty on appellee State Farm Insurance Company ("State Farm") to defend and indemnify him with respect to lead paint claims filed by tenants of the apartment building. The trial court rendered judgment for State Farm. Mr. Redmond filed a timely appeal, contending that although his insurance policy contained a lead paint claims exclusion clause, the trial court erred in (1) failing to conclude that he had a reasonable expectation of insurance coverage for lead paint claims; (2) declaring that State Farm did not breach its insurance contract with him and was not estopped from denying coverage; (3) determining that the jury's finding of contributory negligence extinguished the jury's finding of negligent representation; and (4) disregarding the advisory jury's findings. We affirm.

## FACTUAL SUMMARY

The record on appeal shows that in 1990, Mr. Redmond purchased the Argyle apartment building, located at 3220 17th Street, N.W., in the District of Columbia. Prior to closing on the building, he sought insurance coverage from State Farm. He met with James E. Reid, Jr., one of State Farm's agents, to discuss insurance, because a condition of his mortgage loan was that he obtain "full coverage on the property." The policy which he discussed with Mr. Reid was described as an "all risk" policy, and Mr. Redmond assumed that it covered "everything." He testified that he never received or read his policy and that the only documents he actually saw were a declaration page or certificate of insurance; a price quote; and a brochure on apartment building insurance.

On cross-examination, Mr. Redmond stated that he began his experience in the real estate field around 1973; had previously purchased several apartment buildings for which he had obtained insurance; and had self-managed some of the buildings. He never discussed policy coverage for lead paint claims with Mr. Reid, and acknowledged that the apartment building brochure Mr. Reid gave him stated: "This brochure contains only a general description of coverages and is not a statement of contract. All coverages

are subject to the exclusions and conditions in the policy." Mr. Redmond knew that insurance policies contained exclusions with respect to liability coverage, but did not inquire about the exclusions in his policy; nor did he even think about lead paint coverage when he met with Mr. Reid in May 1990. Mr. Reid was aware that State Farm had excluded lead paint coverage since August 24, 1987.

A copy of the policy was mailed to "John and Rebecca Redmond c/o Long & Foster." At the time of the mailing, Long & Foster served as the property manager for the Argyle apartment building and was authorized to receive the insurance policy and related documents. On January 10, 1991, Washington. Realty assumed the property management duties for the Argyle, and State Farm forwarded a copy of the Redmond policy, including the lead paint claim exclusion page, to Washington Realty. Subsequent renewal documents were sent directly to the Argyle apartment building and contained the lead paint exclusion. As of 1993, when Mr. Redmond began to manage the apartment building himself, the insurance renewal notices and documents were sent directly to him.

In 1993 and 1994, two of Mr. Redmond's tenants in the Argyle apartment building sued him for the negligent exposure of their minor sons to lead-based paint which allegedly injured the children. Mr. Redmond requested that State Farm defend and indemnify him. State Farm declined, citing the lead paint exclusion clause in his insurance policy which stated: "It is agreed that Section II [pertaining to comprehensive business liability] of this policy does not provide coverage for bodily injury arising out of the ingestion or inhalation of paint containing lead or lead compounds." Mr. Redmond filed suit to ascertain whether State Farm was compelled to defend and indemnify him with regard to these lawsuits, and any other lead paint claims filed in the future.[1]

Mr. Redmond did not properly demand trial by jury in a timely manner under the Superior Court Civil Procedure rules. As a result, he filed a motion for a jury trial. The trial court granted his motion under Super. Ct. Civ. R. 39(c), but only to the extent that: "The factual question of whether [Mr.] Redmond received notice of the lead paint exclusion in the insurance policy issued by ... State Farm will be tried by a jury, and any purely equitable issues remaining will be tried by the court." The trial judge presented a verdict form to the jury, however, which required the jury to decide more than the question of whether Mr. Redmond received notice of the lead paint exclusion. The following questions were formulated for the jury's response:

(1) Did Mr. Redmond and Mr. Reid enter into a contract for State Farm to provide lead paint coverage in its "all risk" policy?

(2) Did Mr. Redmond have an objectively reasonable expectation that he would be covered for lead paint claims under his State Farm policy for the following years? (Check): 1990–91, 1991–92.

(3) Did Mr. Redmond or his agent(s) receive the original or a copy of the State Farm insurance policy, declaration sheets, or renewal notices during the following years? 1990–91, 1991–92.

(4) Did Mr. Reid have a duty to disclose to Mr. Redmond that the "all risk" policy State Farm would issue did not include lead paint coverage? If Yes:

(5) Did Mr. Reid breach his duty to disclose that the policy would not cover lead paint claims?

(6) Is Mr. Reid liable for negligent misrepresentation?

If the answer to question (3) was yes for the period 1990–91, or 1991–92:

---

1. Mr. Redmond's amended complaint for declaratory judgment contained seven counts: (1) negligence on the part of Mr. Reid in failing to inform him of the lead paint exclusion clause; (2) negligence on the part of State Farm in failing to inform him of the lead paint exclusion clause; (3) breach of contract by State Farm in failing to provide him with "full coverage" of

"all risks"; (4) reformation of the insurance policy to reflect the intent of the parties to provide "full coverage" of "all risks"; (5) estoppel to prevent State Farm from denying coverage for lead paint claims; (6) negligent misrepresentation of policy coverage by Mr. Reid; and (7) negligent misrepresentation of policy coverage by State Farm.

(7) Was Mr. Redmond contributorily negligent in failing to read the policy, declaration sheets, and renewal notices?

If the answer to question (3) was yes both for the period 1990–91 and 1991–92:

(8) Was Mr. Redmond contributorily negligent in failing to request copies of the policy, declaration sheets, and renewal notices that he didn't receive?

Counsel for State Farm objected to the second and sixth questions, regarding Mr. Redmond's reasonable expectation and Mr. Reid's liability for negligent misrepresentation, on the ground that there was no evidentiary basis on which the jury could resolve them. In response, the trial judge said he saw "no practical harm" in posing the questions to the jury.

The jury answered questions one through seven of the verdict form in the affirmative. Responses (1), (2) and (4) through (6) were favorable to Mr. Redmond, and (3) and (7) to State Farm. In its memorandum opinion issued after the jury rendered its verdict and each party had filed a proposed order and a supporting memorandum, the trial court declared, *inter alia:* "Although this is clearly an equitable proceeding, the Court agreed to allow [Mr.] Redmond to present certain factual issues for jury decision, with the understanding that the jury's verdict would ultimately inform the Court's decision." The trial court concluded that: (1) "As a matter of law ... there was no contract to provide lead paint coverage because there is no evidence of Mr. Reid's intent to be bound to such a contract"; (2) "The doctrine of reasonable expectations does not apply when an insurance policy is unambiguous"; (3) Mr. Redmond failed to prove the "reliance" element of negligent misrepresentation because: "The jury's specific factual findings that [Mr.] Redmond received the State Farm policy and other documentation and was contributorily negligent in not reading them negate the jury's general finding of 'reasonable reliance' upon [Mr.] Reid's misrepresentation by omission"; and (4) no factual basis existed for Mr. Redmond's estoppel claim. Therefore, State Farm had no obligation to defend or indemnify Mr. Redmond.

## ANALYSIS

We review the trial court's findings of fact under a "clearly erroneous" standard, and its conclusions of law *de novo.* D.C.Code § 17–305 (1997); *Ross v. Hacienda Coop., Inc.,* 686 A.2d 186, 190 (D.C.1996) (citation omitted). The issue as to "[w]hether an insurance contract is ambiguous is a question of law which this court reviews *de novo.*" *In re Estate of Corriea,* 719 A.2d 1234, 1239 (D.C.1998) (citing *Sacks v. Rothberg,* 569 A.2d 150, 154 (D.C.1990) (other citations omitted)); *see also Byrd v. Allstate Ins. Co.,* 622 A.2d 691, 694 (D.C.1993); *Peerless Ins. Co. v. Gonzalez,* 241 Conn. 476, 697 A.2d 680, 682 (1997) (citation omitted). Moreover, "[a]n insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." *Peerless, supra,* 697 A.2d at 682 (internal quotations and citations omitted). "[W]e are to give the words used in an insurance contract 'their common, ordinary, and ... popular meaning.' " *Quadrangle Dev. Corp. v. Hartford Ins. Co.,* 645 A.2d 1074, 1075 (D.C.1994) (quoting *Unkelsbee v. Homestead Fire Ins. Co.,* 41 A.2d 168, 170 (D.C.1945)). " 'The clear meaning will be adopted whether favorable to the insured or not.' " *Id.* (quoting *Medical Serv. of District of Columbia v. Llewellyn,* 208 A.2d 734, 736 (D.C.1965)).

### The Breach of Contract, Equitable Estoppel and Reformation Claims

■ Mr. Redmond argues that the trial court erred in rejecting his equitable estoppel and reformation claims and in failing to conclude that State Farm breached its insurance contract with him, because he had a reasonable expectation of insurance coverage for lead paint claims as evidenced by (1) his certificate of insurance, which indicated that he had "all risk" coverage; (2) Mr. Reid's representations that he had the "best coverage available"; and (3) State Farm's promotional brochure pertaining to insurance policies for apartment buildings which did not include lead paint in the list of exclusions mentioned. State Farm contends that because Mr. Redmond's policy is unambiguous

with respect to the lead paint exclusion, the trial court did not err in determining that the doctrine of reasonable expectations was inapplicable.

 Under the "objective law" of contract interpretation, " '[t]he terms of the [insurance] policy, so long as they are clear and unambiguous, express the contract between the parties and will be enforced by the courts unless they violate a statute or public policy.' " *Price v. Doe*, 638 A.2d 1147, 1149 (D.C.1994) (quoting *Robinson v. Aetna Life Ins. Co.*, 288 A.2d 236, 238 (D.C.1972) (other citations omitted)). In this case, the lead paint exclusion clause is clear and the doctrine of reasonable expectations is inapplicable. Mr. Redmond's insurance policy specifically states: "It is agreed that Section II of this policy does not provide coverage for bodily injury arising out of the ingestion or inhalation of paint containing lead or lead compounds." [2] Therefore, what we said in *Western Exterminating Co. v. Hartford Accident & Indem. Co.*, 479 A.2d 872 (D.C. 1984), is equally true in this case: "We would agree that if the policy were ambiguous, then the objective reasonable expectations of [the insured] should guide an interpretation of the insurance contract.... However, the policy is clear ...." *Id.* at 877 (citation omitted). *See also Smalls v. State Farm Mutual Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C.1996). Furthermore, as the court in *Peerless* stated: "[A] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity ...." *Peerless, supra*, 697 A.2d at 683 (internal quotations and citation omitted).

 Mr. Redmond urges upon us the doctrine of reformation and the case of *Max Holtzman, Inc. v. K & T Co.*, 375 A.2d 510 (D.C.1977). We recognized there that: "[W]hen ... an agent acting within the scope of his authority, orally agrees to insure an applicant, and through mistake, a provision orally agreed upon is omitted from the written policy, a court in equity may intervene to reform the imperfectly written agreement to correct defects and to reflect the true agreement and intention of the parties." *Id.* at 513 (footnote and citations omitted). The circumstances of Mr. Redmond's case are not the same as those in *Max Holtzman, supra.* In that case, a retail company purchased an insurance policy through an agent with whom it had dealt for several years. All of the prior policies purchased through this agent covered stolen watches. The agent suggested that the retail company allow a then current policy to lapse and to obtain a policy from another insurance company which he promised would be "as good or better" than his current policy. After watches were stolen from the retail company while the new policy was in effect, the company found that it had no coverage for stolen watches. It sued for reformation of the policy to reflect the agent's and company's intent that the policy cover stolen watches. In applying the doctrine of reformation in *Max Holtzman*, we recognized that the insured and the agent, unlike in Mr. Redmond's case, "mutually understood that the coverage under the new policy was not to be more restricted than in the policy which it was to replace." *Id.* at 513.

In contrast to the relationship between the agent and the insured in the *Max Holtzman* case, the record before us reflects no long-standing and ongoing relationship between Mr. Reid and Mr. Redmond, and there is no indication in the record that both men clearly thought that the insurance policy would cover lead paint claims. Indeed, the subject of lead paint never arose during the 1990 discussions between Mr. Redmond and Mr.

---

2. The jury verdict form included the question: "Did Mr. Redmond or his agent(s) receive the original or a copy of the State Farm insurance policy, declaration sheets, or renewal notices during the ... years [1990–91 and 1991–92]." The jury responded "yes" for both years. The record on appeal supports the jury's response; it shows that a copy of the insurance policy including the lead paint exclusion was sent to Mr. Redmond's property manager initially, and when Mr. Redmond decided to manage the Argyle himself, renewal policies were sent directly to him. Thus, the trial court's finding that Mr. Redmond received the policy which included the lead paint exclusion was not clearly erroneous. Moreover, we have recognized previously " 'the general rule that one who signs a contract has a duty to read it and [that he] is obligated according to its terms.' " *Hart v. Vermont Investment Ltd. Partnership*, 667 A.2d 578 (D.C.1995) (citation omitted).

Reid. Mr. Redmond acknowledged at trial that he never thought about lead paint during those discussions. Moreover, Mr. Reid testified that he informed Mr. Redmond that there were specific exclusions from the policy's coverage. In addition, Mr. Reid was well aware of State Farm's 1987 exclusion of lead paint coverage from its policies and thus could not have intended to cover them in Mr. Redmond's policy.

■ The reformation doctrine applies only in cases necessary to reflect the true intent of the parties. As *Max Holtzman* reiterated:

> [W]hen "a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties, because of the fault or neglect of the agent, it may be reformed so as to express the contract it was intended should be made."

*Id.* at 514 (quoting 13[A] J. APPELMAN, INSURANCE LAW AND PRACTICE § 7609, at 321 (rev. ed.1976)). The record before us reflects no intent on the part of either Mr. Redmond or Mr. Reid to cover lead paint claims in the insurance policy. The words "special form all risk" which appeared on Mr. Redmond's certificate of insurance do not by themselves manifest an intent to cover lead paint claims, and the promotional brochure explicitly stated: "All coverages are subject to the exclusions and conditions in the policy."[3] In short, the doctrines of equitable estoppel and reformation do not apply to this case, and the trial court properly concluded that "[t]here was no contract to provide lead paint coverage as a matter of law." *See Jack Baker, Inc. v. Office Space Dev. Corp.,* 664 A.2d 1236, 1238 (D.C.1995) ("Under D.C. law, as is generally true, '[f]or an enforceable contract to exist, there must be both (1) agreement as to all material terms; and (2) intention of the parties to be bound.'") (quoting *Georgetown*

*Entertainment Corp. v. District of Columbia,* 496 A.2d 587, 590 (D.C.1985)). Consequently, the trial court did not err in concluding that State Farm did not breach its insurance policy with Mr. Redmond, and that the doctrine of equitable estoppel was inapplicable.

*The Negligent Misrepresentation Claim*

Mr. Redmond contends that the trial court committed error in concluding "that the jury's finding of contributory negligence extinguished the jury's finding of negligent misrepresentation." State Farm maintains that Mr. Redmond failed in his burden to prove negligent misrepresentation. Furthermore, State Farm argues, even if Mr. Redmond sustained his burden of proof, the jury's finding of contributory negligence "bars his recovery for any negligent misrepresentation by [the appellees]." The trial court determined that Mr. Redmond did not prove the elements of negligent misrepresentation, and declared that: "The jury's specific factual findings that [Mr.] Redmond received the State Farm policy and other documentation and was contributorily negligent in not reading them negate the jury's general finding of 'reasonable reliance' upon [Mr.] Reid's misrepresentation by omission."

■ The trial court properly instructed the jury that to prove his claim for negligent misrepresentation, Mr. Redmond must show:

(1) that Mr. Reid made a false statement or omitted a fact that he had a duty to disclose;

(2) that it involved a material issue; and

(3) that Mr. Redmond reasonably relied upon the false statement or omission to his detriment for the period of time at issue in this case.

*See Hall v. Ford Enter., Ltd.,* 445 A.2d 610, 612 (D.C.1982). Even assuming that Mr. Reid negligently failed to disclose the lack of lead paint claims' coverage under the insur-

---

**3.** Nothing in the promotional brochure, whether pictures or words, suggested coverage for lead paint claims. Thus, Mr. Redmond's situation differs from those in which promotional and sales materials were considered to determine the reasonable expectation of the insured. *See* for example *Dobosz v. State Farm Fire & Casualty Co.,* 120 Ill.App.3d 674, 76 Ill.Dec. 211, 458

N.E.2d 611 (1983) (promotional material contained picture of water damage although policy excluded water damage); *Barth v. State Farm Fire & Casualty Co.,* 214 Pa.Super. 434, 257 A.2d 671 (1969) (pamphlet contained picture of a burglary and a schedule of coverage but policy excluded coverage for thefts after business hours).

ance policy, nothing in the record before us indicates proof of the second element of negligent misrepresentation, that is, nothing shows that Mr. Redmond would have refused to purchase the policy had Mr. Reid told him directly that there was no lead paint coverage. In fact, the trial court found: "[T]here is no evidence whatsoever that [Mr.] Reid's error of omission was intended to or, indeed, did lull [Mr.] Redmond into thinking he had lead paint coverage, because the matter of lead paint coverage was never raised by either of them." With respect to the third element of negligent misrepresentation, "reasonable reliance," we agree with the trial court that: "[Mr.] Redmond has no factual basis for claiming that [Mr.] Reid led him to believe he had lead paint coverage and thereby induced him not to read the policy."

■ We are satisfied that the trial court properly concluded that the jury's finding of contributory negligence (Mr. Redmond's failure to read his policy after receiving it) "negate[d] the jury's general finding of reasonable reliance upon [Mr.] Reid's misrepresentation by omission." In arguing that the jury's finding of contributory negligence did not extinguish the jury's finding of misrepresentation, Mr. Redmond seizes upon language in *Max Holtzman* stating that: "Even if contributory negligence were a defense in an action in contract, failure of an insured to read a policy does not necessarily bar the insured from recovering," 375 A.2d at 513 n. 4 (citations omitted); and " 'A mistake due to the negligence of an agent, acting within the scope of his employment is satisfactory ground for reformation, since the insured ordinarily relies upon the agent to set out properly the facts of the application.' " *Id.* at 514 (footnotes and citation omitted). This language is not helpful to Mr. Redmond, who was not a novice in the real estate business or in property management.

By the time he met with Mr. Reid in May 1990, Mr. Redmond had over fifteen years of experience in the real estate business and had self-managed some of the apartment buildings which he owned. No discussions of lead paint took place in May 1990 when Mr. Redmond negotiated his insurance policy with Mr. Reid. Mr. Redmond did not become the owner of The Argyle until early June 1990 and the first lead paint claim apparently was not filed until 1993. We see nothing in the record on appeal to support a finding of "reasonable reliance" sufficient to negate a finding of contributory negligence. Furthermore, "the recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying."[4] RESTATEMENT (SECOND) OF TORTS § 552A (1977). And, "the contributory negligence of the plaintiff in relying upon the misrepresentation will bar his recovery." *Id.* Thus, Mr. Redmond's contributory negligence in failing to read his insurance policy and accompanying documents would bar his recovery for negligent misrepresentation. *See Metropolitan Life Ins. Co. v. Johnson,* 363 A.2d 984, 990 (D.C. 1976) ("In the absence of . . . fraud or duress on the part of the agent or other extenuating circumstances, an insured is not relieved of his obligation to examine the contents of his application and to correct any errors or omissions."). Accordingly, we see no reason to disturb the trial court's conclusion that a finding of contributory negligence extinguished Mr. Redmond's negligent misrepresentation claim.

*The Advisory Jury Issue*

■ Mr. Redmond complains that the trial judge usurped the fact finding function of the jury in ignoring most of the jury's responses to questions on the jury verdict form. In making this contention Mr. Redmond overlooks the fact that he did not make a proper demand for a jury trial of right under Super. Ct. Civ. R. 38(b).[5] Instead, he

---

4. Mr. Redmond conceded that his negligence claims were barred by a finding of contributory negligence.

5. Super. Ct. Civ. R. 38(b) provides that:
 Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor ·in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue, and (2) filing the demand as required by Rule 5(d) [concerning the filing of papers]. Such demand may be endorsed upon a pleading of the party.

filed an information sheet reflecting a demand for trial by jury but did not serve this document on State Farm.[6] He thereby waived his jury trial right under Super. Ct. Civ. R. 38(d). In response to his motion for a jury trial, the trial court issued an order on July 31, 1996, referencing Rule 39(c). Rule 39(c) specifies that:

> In all actions not triable of right by a jury the Court upon motion or of its own initiative may try any issue with an advisory jury or, except in actions as to which an applicable statute provides for trial without a jury, the Court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

Although State Farm objected to Mr. Redmond's motion for a trial by jury, the trial court decided that State Farm would not be prejudiced by a jury trial and ordered that:

> The factual questions of whether [Mr.] Redmond received notice of the lead paint exclusion in the insurance policy issued by ... State Farm will be tried by a jury and any purely equitable issues remaining will be tried by the Court.

Fed.R.Civ.P. 39(c), which is identical to Super. Ct. Civ. R. 39(c) in all material respects, "specifically authorizes a Court in its discretion to employ [an advisory jury] procedure in any case 'not triable of right by a jury' and the Court's exercise of such discretion in these circumstances is not reviewable." *Cox v. Babcock & Wilcox Co.*, 471 F.2d 13, 14 (4th Cir.1972) (citation omitted). "The findings of such a jury are, of course, merely advisory; the Court must ... make its own findings and 'review on appeal is of the findings of the court as if there had been no verdict from an advisory jury.'" *Id.* (citing 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2335, at 127 (1971)). Put another way,

[t]he function of the advisory jury is only to enlighten the trial court. An advisory jury does not replace the court as trier of fact in the case. The responsibility for rendering a decision as the trier of fact remains with the judge, even though an advisory panel is used.

8 JAMES W. MOORE ET AL., FEDERAL PRACTICE, § 39.42[1] (3d ed.1998) (footnotes omitted).

■ In this case, Mr. Redmond waived his right to trial by jury by not making a proper written demand that was served on State Farm. *See* Super. Ct. Civ. R. 38(d). After State Farm expressed its opposition to Mr. Redmond's motion for trial by jury, the trial court made it clear that it would use a jury, under Rule 39(c), only for "[t]he factual question of whether [Mr.] Redmond received notice of the lead paint exclusion in the insurance policy issued by State Farm ... [and that] any purely equitable issues remaining will be tried by the court." Thus, of the eight questions on the verdict form, the court indicated in its July 31, 1996 order that it would use the jury to advise it on only one factual question—whether Mr. Redmond received a copy of the policy containing the lead paint exclusion. After the advisory jury rendered its verdict, the trial court appropriately asked each party to file a proposed order and a memorandum in support of the order. In doing so, the court made it clear that "the ultimate decision is going to be mine as to what the judgment is in this case." This position is consistent with Rule 39(c) and the court's July 31, 1996 order.[7] "Rule 39(c) invests the trial court with the discretion—but not the duty—to submit an equitable claim to the jury for a binding verdict." *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 827 (2d Cir.1994). Even if the parties consent to have an equitable issue tried by a jury, "such consent would not divest the trial judge of her [or his] discre-

Super. Ct. Civ. R. 38(d) specifies in part that: "The failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury." Super. Ct. Civ. R. 57 states that "the right to trial by jury may be demanded [in a declaratory judgment action] ... in the manner provided in Rules 38 and 39."

**6.** We express no view as to whether the filing of an information sheet which has the jury demand

box checked is sufficient to satisfy the requirement in Rule 38(b) for "a demand ... in writing."

**7.** Mr. Redmond's reliance on *Etheredge v. District of Columbia*, 635 A.2d 908 (D.C.1993) is misplaced. There was no Rule 39(c) issue in that case.

tion to decide the equitable issue." *Id.* Consequently, we see no merit to Mr. Redmond's challenge to the way in which the trial court handled the conclusions of the advisory jury.

In summary, nothing in this matter convinces us that the trial court erred in granting judgment to State Farm on all of Mr. Redmond's claims. Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*