PEERLESS INSURANCE COMPANY *v.* LEONNELA GONZALEZ ET AL.
(SC 15579)

Callahan, C. J., and Norcott, Katz, Palmer and McDonald, Js.

---

Argued April 24—officially released July 8, 1997

*John-Henry M. Steele*, for the appellants (named defendant et al.).

*Kenneth G. Williams*, with whom was *Claudia A. Baio*, for the appellee (plaintiff).

*Opinion*

PALMER, J. The named defendant, Leonnela Gonzalez, a minor child acting by and through her mother and

next friend, Wilda Correa, appeals from the summary judgment rendered by the trial court in favor of the plaintiff, Peerless Insurance Company (Peerless). Peerless brought this action seeking a declaratory judgment that it was not obligated to defend and indemnify its insureds, Aaron Friedman and Dennis Angel, in an action brought against them by Gonzalez for damages arising from injuries Gonzalez allegedly sustained as a result of her exposure to toxic levels of lead paint that had been applied to the interior and exterior walls of a dwelling owned by Friedman and Angel.[1] Peerless moved for summary judgment, claiming that the lead exclusion provision in the liability insurance policy that it had issued to Friedman and Angel excluded coverage for any injuries resulting from exposure to or contact with lead paint. The trial court granted Peerless' motion, and Gonzalez appealed from the judgment of the trial court to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4024 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The relevant facts and procedural history are undisputed. In March, 1995, Gonzalez brought an action against Friedman and Angel,[2] the owners of a dwelling located at 177 Retreat Avenue in Hartford. In her complaint, Gonzalez alleged that Friedman and Angel had leased those premises to Correa, and that she and Correa resided there from June, 1994, to December, 1994. According to the complaint, the dwelling contained lead paint on its interior and exterior walls and that, as a result of her exposure to this lead paint, Gonzalez suffered serious injuries.

[1] Gonzalez, who was five years old when the suit was filed, brought the action by and through Correa as her next friend.

[2] Jefferson Street Medical Building, Inc., also is named as a defendant in that action. *Gonzalez* v. *Jefferson Street Medical Building, Inc.*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. CV95-0467121S.

In August, 1995, Peerless filed this declaratory judgment action.[3] In its complaint, Peerless alleged that it had issued a liability insurance policy (policy) to Friedman and Angel, effective October 1, 1994, through October 1, 1995, for the premises located at 177 Retreat Avenue. Peerless also alleged that Friedman and Angel had maintained that they were covered under the policy for any damages resulting from Gonzalez' exposure to lead paint at those premises and, consequently, had claimed that they were entitled to have Peerless defend and indemnify them with respect to Gonzalez' claims. Peerless further alleged that because the policy contained an express exclusion for any personal injuries sustained as a result of "exposure to, or contact with lead or lead contained in goods, products or materials,"[4] it was entitled to a declaratory judgment that it was not obligated to defend Friedman and Angel against Gonzalez' lawsuit or indemnify them for any damages awarded Gonzalez.

On December 20, 1995, Peerless moved for summary judgment, claiming that it was entitled to judgment as a matter of law on the basis of the policy's unambiguous lead exclusion. On February 5, 1996, Gonzalez submitted a memorandum in opposition to Peerless' summary judgment motion in which she maintained that the policy's lead exclusion was not applicable to lead paint. On May 20, 1996, Gonzalez filed a supplemental memorandum opposing Peerless' motion for summary judgment, claiming that to the extent that the policy's lead exclusion applied to lead paint, the exclusion was unen-

---

[3] Friedman, Angel and Jefferson Street Medical Building, Inc., also are defendants in this action.

[4] The policy contained an endorsement that provided in relevant part: "LEAD EXCLUSION . . . A. This insurance does not apply: (1) To Bodily Injury, Property Damage or Personal Injury arising in whole or in part out of the mining, processing, manufacture, storage, distribution, sale, installation, removal, disposal, handling, use or existence of, exposure to, or contact with lead or lead contained in goods, products or materials . . . ."

forceable because it "would violate the express public policy of the [f]ederal Fair Housing Act [42 U.S.C. § 3601 et seq.] as interpreted in regulations issued by the United States Department of Housing and Urban Development." In the alternative, Gonzalez argued that the summary judgment motion should be denied because "essential facts remain [to be discovered] regarding whether the [policy's] [l]ead [e]xclusion violates . . . regulations [promulgated under the Fair Housing Act]." The trial court rejected Gonzalez' claims, concluding that the policy's plain language clearly and unambiguously excludes from coverage personal injuries arising from exposure to or contact with lead contained in paint. The court also rejected Gonzalez' claim under the Fair Housing Act (act) on the ground that Gonzalez had failed to provide any authority to support the application of the act to this case.

On appeal, Gonzalez maintains that the trial court improperly granted Peerless' motion for summary judgment because the policy's lead exclusion does not apply to lead paint.[5] Gonzalez also claims that the trial court should have denied Peerless' motion because further discovery might have established that application of the policy's lead exclusion to lead paint constitutes a violation of certain regulations promulgated under the act. We reject both of these claims.

I

Gonzalez first contends that the trial court improperly determined that the policy's exclusion for injuries resulting from "exposure to, or contact with . . . lead contained in goods, products or materials" does not apply to injuries arising from lead paint poisoning. Specifically, she claims that the policy's lead exclusion

---

[5] Neither Friedman, Angel nor Jefferson Street Medical Building, Inc., has appealed from the summary judgment rendered by the trial court in favor of Peerless. See footnote 3 of this opinion.

does not apply to lead paint because that exclusionary provision contains no express reference to lead paint. Alternatively, Gonzalez claims that paint does not fall within the meaning of the terms "goods, products or materials" as those terms are used in the policy's exclusion for injuries caused by lead.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 384. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. See Practice Book § 381." (Citation omitted; internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202–203, 663 A.2d 1001 (1995).

Settled principles also govern the interpretation of insurance policies. "It is the function of the court to construe the provisions of the contract of insurance. . . . An insurance policy is to be interpreted by the

same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Citation omitted; internal quotation marks omitted.) *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 842, 669 A.2d 1221 (1996); *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 583–84, 573 A.2d 699 (1990).

If, however, "the insurance coverage is defined in terms that are ambiguous, such ambiguity is . . . resolved against the insurance company. Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted." (Internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, supra, 214 Conn. 584. " '[T]his rule of construction favorable to the insured extends to exclusion clauses.' " *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 770, 653 A.2d 122 (1995). " 'A necessary predicate to this rule of construction, however, is a determination that the terms of the [exclusion clause] are indeed ambiguous.' " *Kelly* v. *Figueiredo*, 223 Conn. 31, 37, 610 A.2d 1296 (1992). Thus, a "court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity"; (internal quotation marks omit-

ted) *Hammer* v. *Lumberman's Mutual Casualty Co.*, supra, 584; and "[t]he fact that the parties advocate different meanings of [an] exclusion clause 'does not necessitate a conclusion that the language is ambiguous.' " *Kelly* v. *Figueiredo*, supra, 37; see also *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 703, 569 A.2d 1131 (1990) (" '[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings' "). Finally, because the proper construction of a policy of insurance presents a question of law, the trial court's interpretation of the policy is subject to de novo review on appeal. *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 58, 588 A.2d 138 (1991).

Applying these principles to the policy terms at issue in this case, we conclude that the trial court properly determined that the policy's lead exclusion unambiguously applies to lead paint. Gonzalez' first argument, namely, that the lead exclusion should not be construed to apply to lead paint because that exclusionary provision contains no express reference to lead paint, warrants little discussion. Because there is no requirement that a policy exclusion be cast in specific, rather than general, terms, the fact that the policy's lead exclusion contains no express reference to lead paint does not support Gonzalez' contention that lead paint falls outside the purview of the exclusion. The relevant inquiry is not whether the policy issued by Peerless expressly excludes lead paint from its coverage but, rather, whether the language of the exclusionary provision nevertheless clearly and unambiguously applies to lead paint.

Gonzalez' alternative argument is that the lead to which she allegedly was exposed does not fall within the policy's exclusion for "lead contained in goods,

products or materials." In support of this claim, Gonzalez first contends that once paint has been applied to a building, it cannot be considered a good, product or material. We disagree. Because the words "goods, products or materials" are not defined in the policy, we construe them according to their plain meaning. "In order to ascertain the plain meaning of a word, it is appropriate to look to the dictionary definition." *Washington* v. *Meachum*, 238 Conn. 692, 714 n.14, 680 A.2d 262 (1996). "Goods" are defined as "tangible movable personal property having intrinsic value usu[ally] excluding money and other choses in action . . . ." Webster's Third New International Dictionary (1971). "Product" is defined as "something produced by physical labor or intellectual effort: the result of work or thought . . . ." Id. "Material" is defined as "the whole or a notable part of the elements or constituents or substance of something physical . . . or not physical . . . ." Id. Paint clearly falls within the above definitions of the terms "product" and "material."[6] Moreover, we find no merit in Gonzalez' unsupported assertion that paint somehow loses its essential character as a product or material simply because it has been put to its intended use.

Gonzalez also contends that the use of the terms "products" and "materials" in other, unrelated provisions of the policy supports her claim that lead paint is neither a "product" nor a "material" for purposes of the policy's lead exclusion. This argument is similarly devoid of merit. Contrary to Gonzalez' assertion, nothing in the manner in which the words "products" and "materials" are used elsewhere in the policy suggests that those words should not also be construed according to their ordinary meaning. Moreover, a care-

---

[6] We need not decide, therefore, whether paint that has been applied in accordance with its intended use falls within the definition of the term "goods" for purposes of the policy's lead exclusion.

ful examination of the policy reveals that the context in which the words "products" and "materials" are used in the lead exclusion bears no relation to the context in which those terms are used in other provisions of the policy. See *Aetna Life & Casualty Co.* v. *Bulaong*, supra, 218 Conn. 61 (meaning of policy language ordinarily should be drawn from context in which it is used).

We agree with the trial court, therefore, that "[t]he average policyholder could not reasonably reach a conclusion of coverage in the particular circumstances here in the light of and having in mind the language of the . . . [exclusionary provision]. . . . Adoption of [Gonzalez'] contention in the light of the . . . language of the [exclusionary provision] here would render meaningless the words by which the parties expressed their bargain and read into the contract something which is not there." (Citation omitted; internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, supra, 214 Conn. 591. Accordingly, we reject Gonzalez' claim that lead paint falls outside the scope of the policy's broad exclusion for injuries resulting from "exposure to, or contact with . . . lead contained in goods, products or materials."

## II

Gonzalez also maintains that the trial court improperly rendered summary judgment for Peerless notwithstanding her contention that the policy's exclusion for "lead contained in goods, products or materials" may be unenforceable to the extent that the exclusion applies to lead paint. In essence, Gonzalez claims that such an exclusion could violate regulations promulgated by the United States Department of Housing and Urban Development (HUD) under the act making it unlawful for a person to "refus[e] to provide municipal services or property or hazard insurance for dwellings or providing such services differently because of race, color, reli-

gion, sex, handicap, familial status, or national origin." 24 C.F.R. § 100.70 (d) (4) (1996). Under the circumstances of this case, we reject Gonzalez' claim.

The following additional facts are relevant to this issue. On May 20, 1996, Gonzalez filed a supplemental memorandum in opposition to Peerless' summary judgment motion claiming that if the policy's lead exclusion covers lead paint, then that exclusion constitutes "discriminatory 'redlining' based upon . . . familial status."[7] In her supplemental memorandum, Gonzalez asserted that a policy exclusion for lead paint might violate the familial status[8] provision of the regulations because such exclusions discriminate against young children who are susceptible to lead paint poisoning.[9] Gonzalez then stated that "[Peerless'] motion for summary judgment must be denied. Its application to this case violates [the] regulations promulgated under the [act]. In the alternative, essential facts remain regarding whether the [l]ead [e]xclusion violates such regulations. . . . Consequently, [Peerless'] motion must be denied in its entirety. Practice Book § 382."[10]

---

[7] Gonzalez further alleged that a policy exclusion covering lead paint "constitutes discriminatory 'redlining' . . . also probably [based] upon race and/or national origin." Gonzalez, however, did not brief that claim in the trial court, and she has not done so on appeal. Accordingly, we deem it to be abandoned.

[8] "Familial status" is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with—

"(a) A parent or another person having legal custody of such individual or individuals . . . ." 24 C.F.R. § 100.20 (1996).

[9] As Gonzalez points out, our legislature has recognized the danger that lead paint poses to young children. See, e.g., General Statutes § 19a-111c ("[t]he owner of any dwelling in which the paint, plaster or other materials contain toxic levels of lead and in which children under the age of six reside, shall abate or manage such dangerous materials consistent with regulations adopted [by the commissioner of public health]").

[10] Practice Book § 382 provides: "[Summary Judgments]—When Appropriate Documents Are Unavailable

"Should it appear from the affidavits of a party opposing the [summary judgment] motion that he cannot, for reasons stated, present facts essential to justify his opposition, the court may deny the motion for judgment or

John-Henry Steele, counsel for Gonzalez, filed an affidavit accompanying Gonzalez' supplemental memorandum in opposition to Peerless' motion for summary judgment. In his affidavit, Steele stated that "[e]ssential facts exist regarding whether the [l]ead [e]xclusion language relied upon by [Peerless] violates the [act]." Steele further stated that "[Gonzalez has] not had sufficient opportunity to conduct discovery and present facts to justify [her] opposition on whether the [l]ead [e]xclusion relied upon by [Peerless] violates the [act]."[11] The trial court summarily rejected Gonzalez' claim under the act, concluding that "the important objectives of the [act do not] support [Gonzalez'] arguments in this case. Nor has Gonzalez cited persuasive authority in support of this claim."

On appeal, Gonzalez reasserts the two principal claims that she made in the trial court regarding the applicability to this case of the regulations promulgated

---

may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

[11] Steele's affidavit provides as follows:

"I, John-Henry M. Steele, Esq., being duly sworn, do depose and say:

1. I am over the age of eighteen (18) and believe in the obligation of the oath.

2. I am counsel for the minor defendant [Gonzalez] and [her] mother [Correa] in this action.

3. Essential facts exist regarding whether the [l]ead [e]xclusion language relied upon by [Peerless] violates the [act].

4. The issues [regarding the applicability of the act] raised by [Gonzalez] in [her] supplemental memorandum in opposition [to Peerless' motion for summary judgment] are both new and novel.

5. Furthermore, the case is very new, carrying a return date of September 5, 1995. [Peerless' m]otion for [s]ummary [j]udgment was filed shortly thereafter.

6. [Gonzalez has] not had sufficient opportunity to conduct discovery and present facts to justify [her] opposition [to Peerless' summary judgment motion on the ground that the policy's lead exclusion] violates the [act].

7. Nor [has Gonzalez] had time to discover other essential facts relevant to potential defenses—for example, whether the insureds had adequate notice and/or knowledge of the lead exclusion.

/s/John-Henry M. Steele, Esq."

by HUD under the act. First, she contends that there are sufficient facts in the record to support her contention that the policy's lead exclusion violates those regulations. Alternatively, she maintains that the summary judgment motion should have been denied to afford her additional time to ascertain whether she has a viable claim under the HUD regulations. We reject both of these arguments.

Gonzalez' first claim lacks merit because nothing in the record supports a conclusion that Peerless has engaged in redlining activities prohibited under the act. Even if we assume, arguendo, that an insurance company's refusal to issue policies insuring against injuries arising from lead paint poisoning constitutes a violation of the regulations promulgated under the act,[12] the record is bereft of any indication either that Peerless refused to issue such a policy in this case or that it generally has engaged in a practice of refusing to issue such policies. In the absence of such evidence, Gonzalez has failed to establish the existence of any genuine issue of material fact that would defeat Peerless' motion for summary judgment.[13]

Gonzalez next maintains that the trial court should have denied Peerless' summary judgment motion because she had had insufficient opportunity to conduct

---

[12] Gonzalez acknowledges that her claim under the act's regulations is a "new and novel" one; see footnote 11 of this opinion; that has not been adjudicated previously in this or any other jurisdiction. We intimate no view as to whether an insurance company's refusal to issue policies covering lead paint poisoning may constitute a violation of the act or the regulations promulgated thereunder.

[13] Indeed, Gonzalez has not even provided a factual basis sufficient to warrant a good faith belief that Peerless refuses to issue policies covering injuries arising from exposure to or contact with lead paint. We note, moreover, that Peerless' counsel indicated at oral argument that Peerless does, in fact, offer such policies, but at a higher premium than policies that exclude coverage for lead paint-related injuries. Gonzalez has not claimed that such higher priced policies violate the act.

discovery to determine whether Peerless had engaged in prohibited conduct under the act. Gonzalez, however, never filed a motion for a continuance under Practice Book § 382; see footnote 10 of this opinion; seeking additional time within which to ascertain whether Peerless had engaged in illegal redlining practices. Gonzalez merely claims that Peerless' summary judgment motion should be denied because she needed more time to conduct discovery. A party opposing a summary judgment motion pursuant to § 382 on the ground that more time is needed to conduct discovery bears the burden of establishing a valid reason why the motion should be denied or its resolution postponed, including some indication as to what steps that party has taken to secure facts necessary to defeat the motion. See *Great Country Bank* v. *Pastore*, 241 Conn. 423, 437–38, 696 A.2d 1254 (1997); *Dorazio* v. *M. B. Foster Electric Co.*, 157 Conn. 226, 230, 253 A.2d 22 (1968). The trial court has wide discretion under § 382 to determine whether the party seeking additional time to conduct discovery already has had a sufficient opportunity to establish facts in opposition to the summary judgment motion, and we will not disturb its exercise of that discretion absent a clear showing of abuse. See, e.g., *Great Country Bank* v. *Pastore*, supra, 437–38; *Plouffe* v. *New York, New Haven & Hartford R. Co.*, 160 Conn. 482, 490, 280 A.2d 359 (1971). In this case, Steele's affidavit provided no explanation as to why he had been unable to conduct discovery regarding Gonzalez' allegations under the act; his affidavit contained nothing more than the conclusory statement that additional time was needed.[14] In

---

[14] We note that this case had been pending for one year when the trial court rendered its decision granting Peerless' motion for summary judgment, and that the trial court did not issue its decision on the summary judgment motion until more than nine months after it had been filed. The trial court, therefore, reasonably could have concluded that it was incumbent upon Gonzalez to explain why more time was needed to conduct discovery regarding her claim under the act.

such circumstances, we cannot say that the trial court abused its discretion in granting Peerless' summary judgment motion.[15] Therefore, Gonzalez' argument under the act must fail.[16]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[15] The trial court did not expressly address Gonzalez' claim under Practice Book § 382, instead concluding generally that Gonzalez had failed to demonstrate that her claim under the act was supportable. Gonzalez, however, does not contend that the trial court, in granting Peerless' summary judgment motion, failed to consider her claims under § 382, or that the court otherwise failed to exercise its discretion under that provision. Moreover, "to the extent that the trial court's memorandum of decision may be viewed as ambiguous in this respect, we read an ambiguous record, in the absence of a motion for articulation, to support rather than to undermine the judgment." *Water Street Associates Ltd. Partnership* v. *Innopak Plastics Corp.*, 230 Conn. 764, 773, 646 A.2d 790 (1994); see also *Matza* v. *Matza*, 226 Conn. 166, 187–88, 627 A.2d 414 (1993). Because Gonzalez filed no such motion, we must assume that the trial court properly considered and rejected her contention under § 382.

[16] At oral argument, Gonzalez maintained that we should decide the legal sufficiency of her claim under the act notwithstanding the fact that she had failed to engage in discovery to determine whether a factual basis exists to support that claim. Gonzalez asserts that we should do so because her claim is a novel one and because the necessary discovery will be expensive. Gonzalez further contends that if we determine that her claim is a legally viable one, then we should remand the case to the trial court so that she may conduct the appropriate discovery. We decline Gonzalez' invitation to reach the merits of her claim because to do so would be contrary to our well established rule against the issuance of opinions on matters of law for which a sufficient factual predicate has not been established. See, e.g., *Lehrer* v. *Davis*, 214 Conn. 232, 234–35, 571 A.2d 691 (1990); *Singh* v. *Singh*, 213 Conn. 637, 654, 569 A.2d 1112 (1990).