## STEVEN ROBICHAUD ET AL. *v.* HEWLETT PACKARD COMPANY*

Superior Court, Complex Litigation Docket at Waterbury File No. X01 CV-01 0165706S

Memorandum filed May 29, 2003

*Law Offices of R. Bartley Halloran* and *Levy & Droney, P.C.,* for the plaintiffs.

* Affirmed. *Robichaud* v. *Hewlett-Packard Co.,* 82 Conn. App. 848, 848 A.2d 495 (2004).

*Robinson & Cole, LLP,* and *Choate, Hall & Stewart,* pro hac vice, for the defendant.

HODGSON, J. The defendant, the Hewlett Packard Company, has filed a motion for summary judgment on the claims by the plaintiffs, Steven Robichaud and Thomas C. Nicholson, Jr., that its failure to provide full ink cartridges with its lower priced computer printers constituted a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

The plaintiffs do not allege that the defendant made any misrepresentation concerning the cartridges contained in the Hewlett Packard printer that Robichaud bought in 2000 or in the printer that Nicholson bought in 2001. The plaintiffs claim that failure to provide full cartridges made it necessary to buy replacement cartridges manufactured by the defendant sooner, increasing the cost of operating a printer over the cost for printing the same number of copies if a full cartridge had been included at the time of purchase.

STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *LaFlamme* v. *Dallessio,* 261 Conn. 247, 250, 802 A.2d 63 (2002); *QSP, Inc.* v. *Aetna Casualty & Surety Co.,* 256 Conn. 343, 351, 773 A.2d 906 (2001); *Alvarez* v. *New Haven Register, Inc.,* 249 Conn. 709, 714, 735 A.2d 306 (1999); *Nichols* v. *Lighthouse Restaurant, Inc.,* 246 Conn. 156, 163, 716 A.2d 71 (1998); *Peerless Ins. Co.* v. *Gonzalez,* 241 Conn. 476, 481, 697 A.2d 680 (1997); Practice Book § 17-49.

The party moving for summary judgment bears the burden of proving the absence of a genuine dispute as

to any material fact, and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 24, 727 A.2d 204 (1999). "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *Will* v. *St. Vincent's Medical Center*, 252 Conn. 363, 373 n.7, 746 A.2d 753 (2000).

In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 201, 746 A.2d 730 (2000); *Serrano* v. *Burns*, 248 Conn. 419, 424, 727 A.2d 1276 (1999); *Connell* v. *Colwell*, 214 Conn. 242, 247, 571 A.2d 116 (1990); *Forte* v. *Citicorp Mortgage, Inc.*, 66 Conn. App. 475, 482, 784 A.2d 1024 (2001). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 380, 260 A.2d 596 (1969); *Vuono* v. *Eldred*, 155 Conn. 704, 705, 236 A.2d 470 (1967).

In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. *Nolan* v. *Borkowski*, 206 Conn. 495, 500, 538 A.2d 1031 (1988); *Telesco* v. *Telesco*, 187 Conn. 715, 718, 447 A.2d 752 (1982). In *Gould* v. *Mellick & Sexton*, 66 Conn. App. 542, 555, 785 A.2d 265 (2001), rev'd, 263 Conn. 140, 819 A.2d 216 (2003), the Appellate Court stated in dicta that resolution of claims by summary judgment is generally

an "inappropriate way to conclude complex litigation." The Supreme Court has reversed that ruling and has rejected its premise with the following statement: "Succinctly stated, as a matter of law, no case is too complex for summary judgment." *Gould* v. *Mellick & Sexton*, 263 Conn. 140, 147, 819 A.2d 216 (2003).

ARE THERE GENUINE ISSUES OF MATERIAL FACT?

The plaintiffs argue that their CUTPA claim cannot be decided on a motion for summary judgment because the facts should be determined at trial; however, they have failed to identify any facts that are in dispute. The materials submitted by the defendant establish that it manufactures and sells ink jet printers as well as replacement ink cartridges for those printers. With each ink jet printer it sells, the defendant includes one black and one color ink cartridge. Beginning in 1998, the defendant began including with certain of its low end ink jet printers cartridges that were only half full of ink. Although there is no evidence that the word "economy" appeared on the printer purchased by either plaintiff, the defendant referred to the half-filled cartridges as "economy" cartridges. During the time period at issue, the defendant sold half-filled "economy" replacement cartridges, and it also sold completely filled replacement cartridges.

The plaintiffs have set forth the facts concerning their decisions to purchase the printers at issue, and they do not dispute the defendant's factual submissions concerning the packaging for the printers at issue. Neither plaintiff asserts that the defendant made any representation whatsoever concerning the ink cartridges in the printers they purchased. It is undisputed that the packaging stated only that ink cartridges were included, with no statement about the number of copies that could be printed with that cartridge or the volume of ink in the cartridge. The plaintiffs do not claim that the defendant

advertised that the ink cartridges in those models of printers were full, that they would last through a particular number of copies, that they were the same as ink cartridges used in past printers or that they were the same as the full replacement cartridges the defendant sold separately.

Robichaud testified at his deposition that he never saw any product packaging at the time he decided to purchase a Hewlett-Packard 895CSE printer. He testified that he selected that printer on the basis of wanting a printer that cost "around $249.99 plus tax" and on the basis of speed in printing. He looked at a card that described the items that were included, but he did not testify that this card contained any statement about the ink cartridge. Robichaud further testified that no employee at the Staples office supply store where he bought the printer made any representations about it. When he was asked at his deposition, "Was your purchase of the Hewlett-Packard 895 in any way based upon the quantity of ink in the cartridge?" he responded, "No, it wasn't. But I didn't know there was more than one size cartridge."

Robichaud testified that he chose a Hewlett Packard printer on the basis of price and speed of printing. In an affidavit filed in opposition to the defendant's motion for summary judgment, Robichaud did not aver that he saw any representation that the cartridges included with the model 895 printer would last for any particular length of time or that they were the same as cartridges used in printers sold in the past. His only statement with regard to any expectation concerning the cartridges was to the effect that he had owned a printer manufactured by the defendant, which he had purchased at an unspecified date and for an unspecified cost, and that "[a]s a result of my previous ownership of a Hewlett Packard printer, I understood that the new printer would come

with ink cartridges included. Since the original cartridges in the earlier printer I had owned had run out of ink at about the same rate as the replacement cartridges, I assumed that the cartridge included in the new printer I was purchasing was the same as the cartridges which would be used when it ran out of ink." He does not claim that the defendant made any representations that led to those assumptions concerning the model 895 ink jet printer.

Nicholson testified at his deposition that he was told by a sales clerk at the time he purchased his Hewlett-Packard Deskjet 722C printer for $297.07 that he should buy replacement cartridges because the cartridges did not last long and that he did so. He stated that the original cartridge did not have any indication of the volume of ink it contained, nor did the replacement cartridge: "[T]here was nothing which stated how long the original cartridge lasted, the salesman did not know and there was nothing on the box, which I examined." The defendant has submitted the sales slip indicating the simultaneous purchase of the printer and the replacement cartridges. Nicholson stated at his deposition and in his affidavit that he thought that both the installed cartridges and the replacement cartridges would not last long, and that he subsequently discovered that the original cartridges had only half as much ink as the replacement cartridges, which cost $29.99 for the black ink cartridge and $34.95 for the color ink cartridge.

The defendant has produced documents that indicate that the amount of ink in printer cartridges manufactured by various companies for sale with their printers is not uniform. The plaintiffs have produced no documents or other source of any indication that there is a uniform size or a standard for the quantity of ink included in new computer printers in the price range

at issue or that there is a standard concerning the number of copies an ink cartridge packaged with such a new printer will produce.

## DOES THE FAILURE TO SUPPLY FULL CARTRIDGES, WITHOUT ANY MISREPRESENTATION, VIOLATE CUTPA?

The standard for determining whether an act or practice constitutes a CUTPA violation is the test, known as the "cigarette rule," recognized by the Federal Trade Commission in enforcing the federal statute; § 5 (a) (1) of the Federal Trade Commission Act, 15 U.S.C. § 45 (a) (1); on which CUTPA is modeled: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; [and] (3) whether it causes substantial injury to consumers. . . . (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 591, 657 A.2d 212 (1995); *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 215, 579 A.2d 69 (1990); *Conaway* v. *Prestia*, 191 Conn. 484, 492–93, 464 A.2d 847 (1993).

To establish a violation of CUTPA, a plaintiff must also prove that he or she suffered an ascertainable loss. General Statutes § 42-110g (a). The defendant asserts that the undisputed facts do not, as a matter of law, constitute an unfair trade practice. The defendant argues that it made no misrepresentation about the capacity of the original ink cartridges provided with its low end printers, that it did not represent that the cartridges were the same as in older models and that reducing the quality of its product in order to keep

its cost low does not violate CUTPA. The defendant's position is supported by a ruling of our Supreme Court distinguishing between misrepresentations and assumptions by the consumer that have not been created by representations by the defendant or by the existence of a standard concerning the attributes of the item at issue.

In *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 440 A.2d 810 (1981), the court upheld a ruling granting a motion for dismissal of one of the plaintiffs' two claims of CUTPA violations in connection with the plaintiffs' purchase of a Jeep. The claim that was found to have been dismissed properly by the court at the close of the plaintiffs' evidence was a claim that the defendant had failed to disclose that certain component parts of the Jeep were not manufactured by American Motors Corporation, which sold Jeeps as an American Motors Corporation product. Id., 612. The Supreme Court ruled that "[b]ecause nothing in the record . . . suggests that the defendants either affirmatively misrepresented or had a duty to disclose the specific manufacturing history of the component parts, the plaintiffs have not shown that the defendants engaged in an unfair or deceptive trade practice in this respect." Id.

By contrast, the Supreme Court determined that American Motors Corporation may have violated CUTPA by advertising the Jeep as a " 'full-time four-wheel drive' "; id.; vehicle when its engineering was such that it actually was an intermittent four wheel drive system with a manual override that gave the vehicle different driving qualities than an actual full-time full wheel drive design. Id., 611. The court's distinction between the two claims at issue in *Hinchliffe* is plain: A manufacturer that makes no representation about the attributes of its product does not commit an unfair trade practice merely because a purchaser may have particular expectations based only on the purchaser's

own surmise or supposition; but a manufacturer that describes the product's attributes commits an unfair trade practice if its representations are misleading or false.

The Court of Appeals for the Ninth District of Ohio has had occasion to consider the distinction between a product that is misrepresented and one about which no representation is made in *Bellinger* v. *Hewlett-Packard Co.*, Docket No. 20744, 2002 Ohio App. LEXIS 1573 (April 10, 2002). In that case, the plaintiff asserted that the inclusion of half-filled ink cartridges in the defendant's low end ink jet printers violated Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 et seq. (1994). That statute, like CUTPA, prohibits unfair, deceptive or unconscionable acts or practices in consumer transactions. The Ohio appeals court reasoned that in the absence of any standard size or printing capacity for ink cartridges that would create an impression that "cartridge included" meant that an item with particular attributes was included, the defendant did not violate Ohio's Consumer Sales Practices Act by putting a half-full rather than a full cartridge in its low end printer.[1]

The Ohio appeals court's analysis dovetails with the distinction made by our Supreme Court in its analysis of the two claims in *Hinchliffe*. The phrase "four-wheel drive" had a particular meaning that was associated with particular engineering. The description of the product generally as a "Jeep" did not have a particular meaning that included the suggestion that every component part was made in the United States simply because Jeep

---

[1] In *Bowen* v. *Hewlett-Packard Co.*, Kentucky Court of Appeals, Docket No. 2001-CA-001815-MR (September 6, 2002), the Kentucky Court of Appeals reversed the dismissal of a claim made under that state's unfair trade practices act only because facts had not been presented to establish whether there was some standard cartridge such that a representation that a cartridge was included would tap an expectation that a standard item was meant.

was an American brand. There is no evidence that the term "cartridge" meant in 2000 or 2001 a cartridge of a particular size or printing capacity; rather, the undisputed evidence is that cartridges were of various sizes and that the defendant itself sold replacement cartridges, one that was full of ink and a cheaper one that was half full.

The court in *Hinchliffe* implicitly rejected the notion, advanced in this case by Robichaud, that the representation that a cartridge was included was unfair simply because of an individual purchaser's own expectation of what that meant in the absence of a standard meaning for the term. The purchaser of the Jeep at issue in *Hinchliffe* no doubt thought that because the brand was American, all components would be American made, because he complained that the failure to disclose their foreign origin was unfair. The purchaser's expectation, unsupported by a general standard or general meaning of a term, did not stop the Supreme Court from concluding that the nondisclosure of that unexpected feature was not, as a matter of law, a violation of CUTPA. *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 612.

Even if the Supreme Court's ruling in *Hinchliffe* were not seen as directly on point, the plaintiffs fail to articulate just what "established concept of unfairness" or "immoral[ity]," "unethical[ity]," "oppressive[ness]" or "unscrupulous[ness]"; (internal quotation marks omitted) *Williams Ford, Inc.* v. *Hartford Courant Co.*, supra, 232 Conn. 591; is at issue. It has not been held that a manufacturer violates CUTPA by cheapening the quality of its product, even if by doing so the manufacturer creates a product that may have a shorter useful life or be less sturdy than its prior products. The plaintiffs have identified no statute that required printer cartridges to print a particular number of copies, nor have they identified any regulation that required cartridges to meet any particular standards for printing capacity.

The plaintiffs assert that it is unfair to manufacture a product in such a way that a consumer will have to buy a replacement part quickly. If that were so, it would be a violation of CUTPA simply to manufacture inexpensive products with short, useful lives. Although the elimination of low quality goods has some appeal at first blush, the prohibition of such goods would put many consumer items out of the reach of many people who could not afford more costly versions that would last longer.

The undisputed facts indicate that the defendant made no misrepresentation concerning the cartridges included in the printers that were purchased by the plaintiffs. The undisputed facts also establish that ink cartridges for printers are not standard, so that the representation that cartridges were included did not suggest misleadingly that a standard cartridge was part of the product. The claimed failure to meet the plaintiffs' own expectations does not constitute a CUTPA violation as a matter of law, pursuant to our Supreme Court's construction of CUTPA.

## DOES THE UNDISPUTED EVIDENCE CONSTITUTE AN "ASCERTAINABLE LOSS?"

The defendant argues that the undisputed facts do not establish that either of the plaintiffs suffered an ascertainable loss in connection with their purchases. The defendant argues that Nicholson admitted that he was told that the ink cartridge in the printer would not last long and that he bought the printer along with replacement ink cartridges anyway. The defendant argues that Robichaud did not rely on any representation concerning the ink cartridge at the time he bought his printer.

Reliance is not, however, an element of a CUTPA claim. "For the plaintiff victimized by [unfair or deceptive acts or practices], CUTPA provides an action more

flexible and a remedy more complete than did the common law. The increased flexibility of the action stems from the absence of certain obstacles to recovery under the common-law action. The CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain." *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 617. That argument does not, as the defendant asserts, supply an additional reason for finding that the facts do not support a finding of a CUTPA violation.

CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted.