KRISTEN S. NWEEIA *v.* MARTIN T. NWEEIA
(AC 33690)

Lavine, Beach and Bear, Js.

Argued February 21—officially released May 14, 2013

*Campbell D. Barrett*, with whom, on the brief, was *Jon T. Kukucka*, for the appellant (plaintiff).

*Steven D. Ecker*, with whom, on the brief, were *M. Caitlin S. Anderson* and *Rosemary E. Giuliano*, for the appellee (defendant).

*Opinion*

LAVINE, J. The plaintiff, Kristen S. Nweeia, appeals from the judgment of the trial court rendered when it

granted the postdissolution motions filed by the defendant, Martin T. Nweeia. In granting the subject motions, the court awarded the defendant sole legal custody of the parties' minor child and modified the parties' parenting plan. On appeal, the plaintiff claims that the court (1) erred by concluding that her relocation within the state constituted a material change of circumstances and (2) improperly precluded her from calling the child as a rebuttal witness. We affirm the judgment of the trial court.

The following facts are pertinent to our resolution of the plaintiff's claims. The plaintiff and the defendant were married on July 29, 2000. In 2004, the parties had a child, a daughter, who has special educational needs. The court, *Marano, J.*, rendered a judgment of dissolution of the parties' marriage on January 15, 2008, that incorporated their separation agreement and stipulated parenting plan dated October 23, 2007. Pursuant to the parenting plan, the parties were granted "joint custody" of the child. Paragraph 17 of the parenting plan stated: "For any registration purposes and when only one address can be used and/or is permitted for [the child], the [plaintiff's] address shall be used." At the time the parties entered into the parenting plan, the plaintiff was residing in Kent, and the child was enrolled in preschool in the Kent school system.

On January 20, 2010, the plaintiff filed a postjudgment motion for modification of the parties' parenting plan and for permission to relocate with the child to Irvington, New York. No action was ever taken on the motion, but in August, 2010, the plaintiff unilaterally enrolled the child in the Glenville Elementary School in Greenwich. The defendant filed a motion to have the child reenrolled in the Kent school system. Following a hearing held on September 1, 2010, the court, *Danaher, J.*, found that the plaintiff's relocation to Greenwich was based primarily on her employment

needs and without regard for the defendant's parenting rights. Moreover, changing the child's residence to Greenwich would have had an adverse effect on the child by limiting significantly her contact with the defendant and creating a situation inconsistent with the parenting plan agreed on by the parties and ordered by Judge Marano at the time of dissolution. Judge Danaher granted the defendant's motion to have the child reenrolled in the Kent school system.

The plaintiff, however, continued to reside in Greenwich, which increased the child's travel time when she was transported from Greenwich to Sharon, where the defendant resides. Judge Danaher invited the parties "to file any appropriate motion regarding revisions to the existing custodial arrangement." The defendant accepted the court's invitation and filed motions to modify the parenting plan and for sole legal custody of the child. On October 13, 2010, the plaintiff filed a "motion in regard to joint custody" seeking an order that she have final decision-making authority with respect to the child's medical and special needs. A guardian ad litem was appointed for the child.

The court held a hearing on the defendant's motion to modify the parenting plan on November 16 and 17, 2010. During the hearing, the child's guardian ad litem reported that the increased travel time occasioned by the plaintiff's new residence did not appear to adversely affect the child in a significant way. The court denied the defendant's motion to modify the parenting plan without prejudice. In doing so, the court stated that it "cast" the guardian's report against the desirability of maintaining the child's relationship with both parents and considered the fact that the family services unit study was ongoing.

The court held twelve days of hearings on the parties' motions to change custody and modify the parenting

plan in February and March, 2011. Following the parties' submission of proposed orders, they appeared before Judge Danaher for argument. In a thorough, detailed, and thoughtful memorandum of decision dated June 14, 2011, the court denied the plaintiff's motion to relocate and her motion to modify the parenting plan to give her final decision-making authority regarding the child's medical and special needs, and granted the defendant's motion to modify the parenting plan and awarded him sole legal custody of the child and ordered that the child's primary residence be with the defendant.[1] The court denied the plaintiff's subsequent motion to reargue and reconsider.

After the plaintiff appealed from the judgment rendered on the postdissolution motions,[2] she filed a motion for articulation dated January 3, 2012, that included eight numbered paragraphs.[3] The court issued a lengthy articulation decision on February 1, 2012. Thereafter the plaintiff filed a request for further articulation, including a request that the court "[a]rticulate the complete legal basis underlying the court's conclusion that it possessed the discretion to prohibit the plaintiff from calling the minor child as a rebuttal witness during trial on March 15, 2011." The court denied the plaintiff's motion for further articulation with regard

[1] The modified parenting plan is lengthy and complex. The parties are to have shared physical custody of the child, who will spend the first, second, and fourth weekends of every month with the plaintiff, as well as Wednesday afternoons from after school until 7 p.m.

[2] On appeal, the plaintiff seeks to have this court reverse the judgment of the trial court awarding the defendant sole legal custody of the child and direct the court to deny the defendant's motion for sole legal custody of the child. The plaintiff also seeks to have this court reverse the judgment denying her motion to enroll the child in the Greenwich public schools and to modify the parenting plan granting her final decision-making authority regarding the child's medical and special needs.

[3] Request 3 of the motion for articulation concerned the legal basis to preclude the plaintiff from calling the child as a witness. Requests 5 and 6 concerned the court's finding a material change in circumstances.

to its evidentiary ruling. The plaintiff then filed a motion for review in this court in which she sought to have this court order the trial court to further articulate its reasons for precluding the child from testifying. This court granted the plaintiff's motion for review but denied the relief requested. Additional facts will be set forth as necessary.

I

The plaintiff's first claim is that a parent's in-state relocation cannot constitute a material change in circumstances warranting the modification of legal custody. We decline to review this claim as it was not preserved for appeal during trial.[4]

"The court shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to the trial." Practice Book § 60-5. "[B]ecause our review is limited to matters in the record, we . . . will not address issues not decided by the trial court." (Internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 171, 745 A.2d 178 (2000). "The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis in original; internal quotation marks omitted.) *State* v. *Colon*, 82 Conn. App. 658, 659, 847 A.2d 315, cert. denied, 269 Conn. 915, 852 A.2d 745 (2004). "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *State* v. *Dalzell*, 282 Conn. 709, 720, 924 A.2d 809 (2007).

---

[4] The defendant argued in his brief that the plaintiff's claim was barred by the appellate waiver doctrine.

The following facts are relevant to our determination that the plaintiff failed to raise this issue in the trial court. On April 21, 2009, the plaintiff filed a motion entitled postjudgment motion for modification of parenting plan and visitation and for relocation of minor child. In her motion, the plaintiff represented that she was "relocating her residence to Irvington, New York and seeks to relocate the residence of the minor child with her while she is in her physical custody. . . . The *relocation to Irvington is a substantial change in circumstances* and would have a significant impact on the Parenting Schedule . . . ." (Emphasis added.) On January 20, 2010, the plaintiff amended the subject motion for modification of parenting plan and relocation of the child. In her amended motion, the plaintiff represented that she "is seeking to relocate her residence to Irvington, New York or Greenwich, CT and seeks to relocate the residence of the minor child with her while she is in her physical custody. . . . The *relocation is a substantial change in circumstances* and would have a significant impact on the Parenting Schedule . . . ." (Emphasis added.) Moreover, on October 13, 2010, the plaintiff filed a motion entitled "postjudgment motion in regard to joint custody" in which she sought to continue joint legal custody of the child and that she be granted "the ability to make the final decisions in regard to the special needs of the child . . . ."

In both the original motion to modify the parenting plan and the amended motion, the plaintiff stated that her relocation, whether to Irvington, New York, or Greenwich, constituted a substantial change in circumstances and, therefore, was a sufficient reason to alter the parenting plan. During the hearing on the parties' motions, the parties did not dispute that the plaintiff's relocation to Greenwich constituted a substantial change in circumstances. For the plaintiff to claim on appeal that the court erred by finding a substantial change of circumstances due to the plaintiff's relocating from Kent to Greenwich, an in-state relocation, is trial

by ambuscade. "[O]rdinarily appellate review is not available to a party who follows one strategic path at trial and another on appeal, when the original strategy does not produce the desired result. . . . To allow the [party] to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the [opposing party and the court] with that claim on appeal." (Internal quotation marks omitted.) *Glenn* v. *Glenn*, 133 Conn. App. 397, 403 n.6, 35 A.3d 376 (2012).

We therefore decline to review the plaintiff's claim that her in-state relocation does not constitute legal grounds for a substantial change of circumstances warranting a change in custody and the parenting plan. In this instance, the plaintiff herself admitted that her relocation to Greenwich constituted a substantial change. "[T]he theory upon which a case is tried in the trial court cannot be changed on review . . . . Moreover, an appellate court should not consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented at trial. . . . Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Citation omitted; internal quotation marks omitted.) *Dockter* v. *Slowik*, 91 Conn. App. 448, 462, 881 A.2d 479, cert. denied, 276 Conn. 919, 888 A.2d 87 (2005). The plaintiff's claim is not reviewable as it is not consistent with her theory at trial.

## II

The plaintiff's second claim is that the court erred by precluding her from calling the parties' child as a rebuttal witness.[5] We disagree.

---

[5] The defendant claims that the plaintiff's second claim also is not preserved because no offer of proof was made at trial. We disagree. The record demonstrates that the reason the plaintiff wanted to call the child as a rebuttal witness was to demonstrate to the court that the child could not read.

The following facts, as found by the court, are relevant to this claim. During the hearing on the parties' motions to change the parenting plan and custody orders, the parties vigorously disputed whether the Kent public schools or the Greenwich public schools could better meet the child's educational needs. There was no dispute that the child has special educational needs, although the parties dispute the degree to which she is disabled and the type of educational support she requires.

The court found that the plaintiff's expert witness, Edward Dragan, conducted an investigation that was so superficial and simplistic that it could not be relied upon for the purpose of determining whether the Glenville School in Greenwich offers better, or even meaningfully different, opportunities for the child than those available and being provided by the Kent Center School. The plaintiff also called Steven Boksenbaum, a neuropsychologist, who had never met the child and only had reviewed the child's records.

The defendant called several witnesses, including educational specialists. Rebecca LaFontan was the child's first grade teacher. She testified that the child was one of three special needs children in her class and addressed the child's particular needs and the resources available. She also discussed the parties' parenting styles and attitudes toward her recommendations and requests. LaFontan believed that the child frequently is tired and has observed dark circles under her eyes. Mary Himelstein has more than thirty years of experience dealing with special needs children and their educational placements. To carry out her investigation, Himelstein obtained data from the school rather than the child's parents. She reviewed school records, including the child's individual education plan, behavior charts, transcripts, in-school assessments and visited Kent Center School, where she met with several school

officials and special needs providers. Himelstein also observed the child in her classroom where the child "perform[ed] mathematically" and did some sight reading. Himelstein opined that the Kent Center School was providing an appropriate program for the child. Although the child is not performing at grade level, she is progressing.

In rebuttal, the plaintiff called John Marsicano, a school psychologist for Kent Center School and Region One School District. He helps the child with socialization issues. He testified that a school has not failed a child if she has not mastered a goal in her individual education plan. If the child progresses satisfactorily, the goal can remain the same the next year because the standards for the goal differ as the child moves along. The guardian ad litem also testified and recommended that the child continue to attend Kent Center School. Although the guardian ad litem testified in November, 2010, that she did not see concrete evidence that the commute between Greenwich and Kent had an adverse affect on the child, she was more concerned about the issue at the time of trial. She also testified that, if joint legal custody continued, neither parent should have final decision-making authority.

The plaintiff's position at trial was that the child should be enrolled in the Glenville Elementary School because it could better meet the child's educational needs. She also was adamant that the child could not read, despite Himelstein's testimony regarding her observations of the child. To rebut Himelstein's testimony, counsel for the plaintiff requested that the plaintiff be permitted to call the child as a witness to read before the court, or if the court found that inappropriate, to have the child read to her guardian ad litem.[6]

---

[6] With regard to the child's reading to the court, counsel for the plaintiff stated: "I would like the court, if the court is available, to have an opportunity to have the child read to the court. And if the court feels that's inappropriate, then, what I would like to do, is have the child read to the guardian ad litem

The court refused the request, noting that the child's ability to read was not the central issue in the case.[7] The guardian ad litem agreed with the court's reasoning and noted that she was not an educational expert.[8] The defendant objected to having the child read to the court or the guardian ad litem.

After the plaintiff appealed, she filed a motion for articulation, asking the court, among other things, to

to see, in fact, if she can read because there's two experts: one says the child can't read; the other says the child can read. There's mom who says the child can't read and there's dad who says the child is reading."

[7] In denying the plaintiff's request to have the child read to the court or the guardian ad litem, the court stated: "[B]oth parties have introduced documentary evidence. I don't believe it's been the subject of oral testimony, but within the documents, there has been evidence by a number of individuals, that indicate that those individuals who are either medical or educational experts, or witnesses—I think at least one of them is a plaintiff's expert, that I recall reading—making indications to the effect that it may well be that some of the issues affecting this child are the product of the stress visited on her, as a result of this litigation and the disagreement between the parties.

"The last thing I'm going to do is exacerbate that situation or even take the risk of exacerbating that situation. I'm not putting this child under the microscope of the court. I refuse. . . . I must disagree with that recommendation. I'm not going to observe this child reading or performing any other function. In terms of whether the guardian ad litem should do that, I don't know if that's any better. It's a little better arguably, but it . . . smacks of putting her to the test.

"I'm capable, I feel, of weighing the opinions of the various experts and deciding who should be credited and who should not. That's part of what a fact finder has to do with any issue that comes before it. But I'd be interested in the thoughts of the guardian ad litem."

[8] The guardian ad litem stated: "Your Honor, I couldn't agree with you more. We're asking [the child] to perform functions in front of parents and me. She's met me a couple of times, but I just think it's an awful situation for her. And I'm not an educational expert. I believe that there is some fluctuation in [the child's] abilities at various times, both from the documentary evidence and the witnesses, as Your Honor has stated. And I'm not sure that Your Honor's decision is going to revolve around whether [the child] can read or perform various functions. I mean, that's a factor for Your Honor, but this is not a due process hearing or any other hearing under the educational process. And we have numerous witnesses, and I'll leave it up to Your Honor."

"[a]rticulate the legal basis for precluding the plaintiff from calling the minor child as a rebuttal witness during trial on March 15, 2011." In its articulation, the court responded to the plaintiff's request in a thoughtful, sensitive, and knowledgeable manner.[9] We take particular

[9] Throughout its articulation, the court cited portions of the hearing transcript, which have been omitted from the text here. "The defendant presented expert testimony at trial. The defendant's expert testified, inter alia, that the . . . child had some ability to read. . . . The plaintiff explored that issue in detail during cross-examination. . . . The plaintiff sought to further respond to the defendant's expert's testimony by calling the child as a witness, either before the court or before the guardian ad litem, for the purpose of demonstrating to the court that the minor child cannot read. . . .

"The court declined to allow the plaintiff to bring the minor child to court or before the guardian ad litem for the purpose of testing the child's reading abilities. The court's decision had multiple bases, including the fact that the tactic proposed by the plaintiff was likely to expose the minor child, a special needs child who was six years of age at the time, to a variety of negative effects.

"First, the child would be placed in the position of having to serve as a witness for one parent in opposition to her other parent. Second, if brought to court, the child would be placed under significant emotional and psychological pressure by having to 'perform' before a judge who would ultimately have to decide issues relating to her custody. Testing the child's reading skills before the guardian ad litem would not have been much better. Such an action could have jeopardized the trust that exists between the minor child and the guardian ad litem. '[A]n effective guardian ad litem may have to gain the trust and confidence of his or her ward for the purposes of obtaining relevant information from the child, [because] it is ultimately the guardian ad litem's responsibility to relay his or her findings and recommendations back to the court.' *Linnell* v. *Linnell*, Superior Court, judicial district of Waterbury, Docket No. FA-06-4010515 (February 16, 2010) (*Bozzuto, J.*) (49 Conn. L. Rptr. 386). Third, the plaintiff did not make any offer of proof as to how a reading skill demonstration before either the court or the guardian ad litem would, or could, bear any relation to what the defendant's expert had discreetly observed in the child's classroom setting. Fourth, the theory of the plaintiff's presentation was that the Greenwich school system is preferable to the Kent school system with regard to addressing the child's special needs. Whether the child has acquired some reading skills in the Kent school system would add little to the body of information presented to the court on the relative merits of the two school systems. Fifth, to the extent the plaintiff was offering the testimony to impeach the testimony of the defendant's expert, such evidence would have constituted improper impeachment through the use of extrinsic evidence. *State* v. *Adorno*, 121

note that, in its articulation, the court found that the proffered demonstrative evidence would not be probative of the central issue in the case.

On appeal, the plaintiff claims that the court misconstrued the law and violated the rules of practice; see Practice Book § 32a-4 (b); and her statutory and due process rights to call the child to testify. She therefore argues that our standard of review is plenary. The plaintiff relies on the readily distinguishable case of *Gennarini* v. *Gennarini*, 2 Conn. App. 132, 477 A.2d 674 (1984), which held that a court violated the due process rights of a party by interviewing a minor child in chambers in the absence of the parties and their counsel, except where the parties have consented. Id., 134–35. The issue in *Gennarini* concerned a postjudgment motion to modify custody, and the court sought to ascertain the preference of the parties' seven year old child in private. Id., 133. There is no due process issue presented by the evidentiary question here.

The proffer of the child's reading to the court did not present the court with a complicated legal decision, but was one basic to the admission of all evidence: was the evidence relevant. Our code of evidence provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence."

Conn. App. 534, 549, 996 A.2d 746, cert. denied, 297 Conn. 929, 998 A.2d 1196 (2010).

"In view of the fact that the plaintiff had already cross-examined the defendant's expert regarding the child's ability to read, the marginal benefits associated with having the child testify, and considering the significant risk of causing emotional and psychological harm to this child—or any child—in the manner proposed by the plaintiff, the court exercised its discretion to decline to allow the plaintiff to examine the minor child in order to rebut the defendant's expert. The proffered testimony would have been a waste of time, of little probative value and adverse to the best interests of the child. *Motzer* v. *Haberli*, 300 Conn. 733, 741–42, 15 A.3d 1084 (2011)." (Citations omitted.)

Conn. Code Evid. § 4-1. "Evidence that is not relevant is inadmissible." Conn. Code Evid. § 4–2.

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 670, 760 A.2d 989 (2000).

One of the issues before the court was whether the child should attend the Glenville Elementary School or the Kent Center School. No witness disputed that the child has educational disabilities or that she did not read at grade level. The question for the court to determine was which of the two schools could better address the child's educational needs. Both parties presented documentary and testimonial evidence from experts and fact witnesses to address that question. The court found that the child's ability to read had little probative value as to which of the two schools could better meet her needs. Moreover, the guardian ad litem noted that she was not in a position to evaluate the child's reading level. In light of the court's conclusion that the proffered evidence would not aid it in deciding which school would better meet the child's educational needs, we conclude that the court did not abuse its discretion by precluding the plaintiff from calling the child as a rebuttal witness.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Although we resolve the plaintiff's claim on the ground of relevance, we note the court's finding that it was not in the child's best interest to be called to read to the court or the guardian ad litem.